Missouri, Kansas and Texas Railway Company v. D. D. Lynch.

Decided November 11, 1905.

**1.—Negligence—Defective Engine—Inspection.**

A defect in an engine, which an inspection would have disclosed, raises the issue of negligence. Evidence held to show that there was not due inspection of an engine, and that an inspection would have disclosed that its shaker bar attachments were out of repair, by reason of which the fireman was injured in using the shaker bar.

**2.—Same—Charge on Weight of Evidence.**

Requested charges to the effect that the mere fact that an accident happens or that an injury occurs is not itself proof of negligence, nor was the mere fact that plaintiff was injured by the giving way of the shaker bar attachment such proof, were properly refused as on the weight of evidence.

**3.—Charge—Request.**

Where the main charge fairly embraces the proposition announced in a special charge requested, a refusal to give the latter is not error.

**4.—Personal Injury—Evidence—Indemnity—Accident Insurance.**

In an action for personal injury to a railroad employe it was not error to exclude evidence as to how long he drew indemnity for the injury from an accident insurance company and as to whether it was for a partial or entire disability, in the absence of a showing as to the terms of the policy and what kind of an injury would, under the policy, constitute a partial and what a total disability.

**5.—Same—Exhibiting Injured Limb—Demonstration by Physician.**

While a physician was on the witness stand plaintiff exhibited his injured limbs and the physician testified that they had lost sensation and were without feeling, and to demonstrate this to the jury, stuck pins into the exposed limbs, and thereafter deprived plaintiff of the support of his crutches, when he fell. Held, that the evidence was admissible to show the nature and extent of plaintiff's injuries, and as it could have affected only the amount of the recovery, of which no complaint was made as being excessive, the defendant could not have been harmed by its admission.

**6.—Same—Expert Evidence—Opinion of Physician.**

A medical expert could testify to his opinion that what he saw about plaintiff and the length of time that had elapsed since the injury, indicated more the idea of permanency in his condition than that of temporary injury.

Appeal from the District Court of Grayson. Tried below before Hon. B. L. Jones.

*T. S. Miller, A. L. Beaty* and *C. H. Smith,* for appellant.—The court

erred in overruling the defendant's motion for a new trial, because the evidence was wholly insufficient to show that the shaker bar attachment gave way and came loose, thereby causing the plaintiff's injuries, on account of any negligence of this defendant, there being no proof of negligence except the mere happening of the accident, and this was manifestly insufficient. Railway v. Barrager, 14 S. W. Rep., 242; Trinity Lumber Co. v. Denham, 85 Texas, 56; Broadway v. Gas Company, 60 S. W. Rep., 270; Patton v. Railway, 179 U. S., 658; Railway v. Barrett, 166 U. S., 617; Pierce v. Kile, 80 Fed. Rep., 865; Killman v. Palmer, 102 Fed. Rep., 224; Kinkead v. Railway, 29 Pac. Rep., 3; Deane v. Light Company, 39 Pac. Rep., 346; Huff v. Austin, 21 N. E. Rep., 864; Brownfield v. Railway, 77 N. W. Rep., 1038.

*Wolfe, Hare & Maxey,* for appellee.

BOOKHOUT, Associate Justice.—This was a suit for damages on account of personal injuries sustained by the plaintiff while acting as fireman on an engine pulling one of the defendant's freight trains, resulting in a verdict and judgment for $12,500, from which this appeal is prosecuted.

*Conclusions of fact.*—Appellee, a fireman on one of appellant's engines, was injured while shaking the grates of the engine, when suddenly the shaker bar attachments became disconnected from the grates, precipitating him backward through the open space between the engine cab and tender on the ground, resulting in serious and permanent injuries to him, whereby he sustained damages in the amount found by the jury. The attachment for shaking the grates is a thick rod about three or four feet long running down the end of the cab by the head of the boiler down through the deck, and fastens underneath by a bolt to a kind of cross-arm which fastens to the grates in the firebox. The fireman shakes the grates by means of a lever attached to the top end of this rod, which lever, when not in use, folds down by the side of the boiler head. When it is necessary to shake the grates the lever would be raised up horizontally, and taken hold of with both hands; you would proceed to work it backwards and forwards, which sometimes requires little force, but sometimes a great deal of force. The shaker bar is about two inches thick, and is strapped to the boiler head to keep it in its place. There was a bolt about one inch thick by which it was connected at the lower part with the grates. After the accident, an examination of the shaker bar disclosed that the bolt which connected the shaker bar with the grates was out. Appellee did not assume the risk of injury resulting from the defective shaker bar. A proper inspection of the engine by the agents and employes of appellant would have disclosed the defect in the shaker bar attachments, which defect rendered the engine unsafe, and proximately caused the injuries to appellee.

*Conclusions of law.*—Error is assigned to the court's action in overruling defendant's motion for new trial, in that it is contended that the evidence was wholly insufficient to show that the shaker bar at-

tachment gave way and came loose on account of any negligence of defendant. For the same reason it is insisted that the court erred in refusing to direct a verdict for defendant, as requested by its special charge number 1.

The bolt which held the shaker bar to the grates was about one inch thick and had a large head on it. On the other end were threads on which a nut was turned, and below the nut there was a hole in the bolt through which a cotter key was passed and then spread. If the bolt was all right it could not work out, nor could it be broken by any strength one could place against it. If the cotter key is out, and the nut off, in shaking the grates the bolt will work out. After the accident it was discovered that the bolt was out. The bolt must have been out when the accident occurred. It is clear that the absence of this bolt was the cause of the accident. At the time of the accident the engine was returning to Denison from a trip to Muscogee. It left Denison on the 19th of September, 1903, and the accident occurred on September 21. A witness testified that he inspected the engine at Denison on the 19th of September, but on cross-examination he stated he had no recollection of inspecting this particular engine—that he only inspected during the daytime; that the company had no night inspector; that he was the only inspector at that time; it was a very busy time with the railroad, and that many engines went out without inspection. The evidence shows that if the cotter key was out, and the nut off of the bolt, the bolt would work out. There is very little wear on it, and it is not liable to break. On the trip prior to this the appellee was down under the engine cleaning the ashpan, and noticed the shaker bar attachment, and did not discover anything wrong with it. We are of the opinion that the evidence fails to show an inspection of this engine prior to its starting on this trip, and that an inspection would have disclosed the fact that its shaker bar attachments were out of repair. By the use of ordinary care the railway company could have had knowledge of this defect and remedied the same, and its failure to do so was negligence. A defect in the engine, which an inspection would have disclosed, raises the issue of negligence. The duty of inspection did not rest upon appellee. He had the right to assume that the company had used ordinary care to provide him with a reasonably safe engine. The duty to inspect was upon the company, and the evidence failing to show an inspection, the jury could infer that, in this respect, it was guilty of negligence, and that such negligence was the proximate cause of appellee's injuries. (San Antonio & A. P. Ry. Co. v. Lindsey, 27 Texas Civ. App., 316, 65 S. W. Rep., 668; Galveston, H. & S. A. Ry. Co. v. Buch, 27 Texas Civ. App., 283, 65 S. W. Rep., 681; Gulf, C. & S. F. Ry. Co. v. Wood, 63 S. W. Rep., 165: Galveston, H. & S. A. Ry. Co. v. Parsley, 6 Texas Civ. App., 150, 25 S. W. Rep., 64; McCrary v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168; Galveston, H. & S. A. Ry. Co. v. Templeton, 87 Texas, 42.) It follows that, in our opinion, the court did not err in refusing to instruct a verdict and in overruling appellant's motion for a new trial.

There was no error in refusing appellant's special charges reading: "Gentlemen of the jury: The mere fact that an accident happens, or

that an injury occurs, is not of itself proof of negligence." "Gentlemen of the jury: The mere fact that the plaintiff was injured by the giving way of the shaker bar attachment is no proof of negligence against the defendant." These requested charges were on the weight of the evidence and were properly refused. The court's main charge restricted the jury in their finding to such facts and circumstances as they might find constituted negligence.

For the reasons given for refusing appellant's special charges above set out, there was no error in refusing the special charges as complained of in the fourth, fifth and sixth assignments of error.

The action of the court in refusing the following special charge is assigned as error: "Gentlemen of the jury: When the plaintiff entered the service of the defendant as fireman he assumed all risks arising on account of the ordinary and usual wear of the company's machinery, and if you believe from the evidence that his injury was due to an accident arising from such ordinary and usual wear, and that there was no negligence on the part of the defendant—that is to say, that the defendant did not fail to use ordinary care to discover the defect and repair such machinery—you must return a verdict for the defendant." The court had instructed the jury on assumed risk. The main charge fairly embraced the proposition announced in the special charge requested, hence its refusal was not error.

Error is assigned to the action of the court in sustaining exceptions to certain questions propounded by appellant to the appellee while testifying on cross-examination in the case—how long he drew indemnity from an accident insurance company in which it was shown he was insured, and whether he drew indemnity for a partial disability or entire disability. These questions were excepted to as irrelevant, immaterial, and not the best evidence. The exception was sustained. Whether the appellee drew indemnity, and if so, the amount, and whether for a partial or entire disability, we think was immaterial to any issue in the case. The terms of the policy under which the indemnity was paid were not shown, and it is not shown what kind of an injury would, under the policy, constitute a partial disability and what a total.

During the trial, and while plaintiff's witness Dr. W. C. Rutledge was on the stand, the plaintiff's counsel had the plaintiff to come around in front of the jury, take off his shoes and socks, and pull up his trousers and underwear, so as to expose his limbs above the knees, and then requested the witness Dr. Rutledge to show the jury, and demonstrate the plaintiff's sensibility or lack of sensibility in his limbs. The witness then proceeded as follows: "As I said a while ago, he has a loss of sensation. His feet stay cold all the time. There is no feeling down here. You can pinch it as deep as you want to and it don't make any difference. There is no sensation whatever. (Here the witness stuck pins in the plaintiff's limbs in various places, and continued the process until the blood was running freely from one place in one limb.) You can light a match there, and burn him, if you want. The other is the same as this one (continuing to prick the other limb). However, the left is a little better leg than the other. He seems to sort of bring it up from the hip and brace himself on it so he can walk on his crutches. If it wasn't, he could not walk on his crutches."

Then, turning to the jury: "If you would like for me to, I will stick a match under it. He won't have any pain about it at all. It will make a blister, of course." And while said witness was on the stand the plaintiff's counsel had the plaintiff to stand up in front of the jury, and requested the witness to remove his crutches. The witness then proceeded to take one crutch from under the plaintiff, leaving the plaintiff standing on the other, and then forcibly removed the latter, allowing the plaintiff to fall nearly to the floor, whereupon the witness, who was a very strong man, caught the plaintiff, raised him up, stood him erect, and then turned him loose and let him fall again, this time, as before, catching him just before he struck the floor.

To these proceedings the defendant objected on the ground that they were improper, and calculated to prejudice the minds of the jury. The objection was overruled and the evidence admitted. The evidence was admissible as tending to show the nature and extent of appellee's injuries. This evidence could only have affected the amount of the recovery, and, as there is no complaint made that the verdict is excessive, the defendant could not have been harmed by its admission.

The trial court did not err in admitting the testimony of Dr. Moore that, in his opinion, from all the history given him of the case, and from what he saw about plaintiff, the length of time that had elapsed since the injury, it would indicate more the idea of permanency in his condition than not. The witness was a medical expert, and could give his opinion, based on his examination and the history of the case received from plaintiff. The appellant could, on cross-examination of the witness, have shown that the history of the case received by the witness from appellee was not correct. The evidence went only to the extent of the injuries of appellee, and no complaint is made of the excessiveness of the verdict.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.