GALVESTON, HOUSTON & HENDERSON RAILROAD COMPANY ET AL. V.
EDITH L. ALBERTI.

Decided June 12, 1907.

**1.—Charge—Statement of Case.**

In stating the case to the jury the court is not required to recite in its charge any more of the pleadings than it deems necessary. Any supposed omission or deficiency in this respect should be supplied by a requested instruction.

**2.—Carrier—Passenger—Alighting from Train at Unusual Place.**

If a passenger leave a railroad train without the invitation of the conductor, at a place which is not a station for the delivery of passengers, there being no prior agreement on the part of the railroad company that he may alight there, and is injured in so doing, it is ordinarily a question of fact for the jury whether or not such act was negligence.

**3.—Special Charges—Properly Refused, when.**

Where the proposition of law embraced in a special charge is already embraced in the main charge, it is proper for the court to refuse to give the same. Charges considered, and held properly refused for this reason.

**4.—Negligence—Pleading—Charge.**

Where, in a suit for personal injuries, the defendant specially plead each and every act of contributory negligence relied upon as a defense, and the court submitted each and all of such issues to the jury in its main charge, it was not error to refuse a special charge on contributory negligence so general in its terms that it might be construed to include acts of negligence not pleaded by defendant.

**5.—Same.**

Where, in a suit for personal injuries, the defendant plead contributory negligence, and the court submitted the issue, but did not use the expression "contributory negligence" in its charge, the refusal of a special charge defining contributory negligence was not reversible error.

**6.—Carrier of Passengers—Negligence as Matter of Law.**

Where a carrier, knowing that a female passenger is in the act of alighting from its train, suddenly puts the same in motion, it would be so wanting in that high degree of care due from a carrier to its passengers as to make it guilty of negligence as matter of law, and a special charge submitting as an issue such state of facts was properly refused.

**7.—Personal Injuries—Damages—Charge.**

In a suit for personal injuries, charge considered (see appellant's brief), and held not to be on the weight of the evidence nor to assume that plaintiff's injuries were permanent, when read and construed as a whole.

**8.—Leading Question—Testimony.**

The answer of a witness to a question in proper form is not to be excluded because a previous question concerning the same matter, was leading.

**9.—Personal Injuries—Expert Testimony.**

In a suit for personal injuries it was not error for the court to sustain an objection to a question propounded to a doctor as to whether or not he concurred in the opinion of another doctor concerning the extent of the plaintiff's injuries. Each witness should give his professional opinion independently of the other and the jury should determine whether or not they concurred.

**10.—Personal Injuries—Expert Testimony.**

A doctor, acquainted with the injuries to plaintiff's ankle, was competent

to give his opinion that plaintiff could not have used her leg and ankle without the aid of crutches sooner than she did.

Appeal from the District Court of Harris County. Tried below before Hon. J. C. Hutcheson, Jr.

*Wilson & Dabney* and *Baker, Botts, Parker & Garwood,* for appellants.—The omission on the part of the court, in its preliminary statement of the issues, to mention in any way the defendants' plea of contributory negligence, had the effect to cause the jury to lose sight of this factor in the case, in their consideration of it. Marsalis v. Crawford, 8 Texas Civ. App., 489.

"That a party is entitled when he requests it by proper instructions to have the facts establishing his cause of action or ground of defense, with the law applicable to them, affirmatively submitted by the court to the jury, is the settled rule of practice." St. Louis S. W. Ry. Co. v. Hall, 98 Texas, 480.

Eleventh Assignment of Error.—The court erred in giving to the jury section No. 4 of the court's main charge, which is as follows:

"If you shall find a verdict for plaintiff, you will assess the damages at such a sum of money as, if paid in hand at this time, will fairly compensate Mrs. Edith L. Francis for the injury sustained by her, and alleged in the plaintiff's petition, and proved by the evidence, if any, and in so doing, you will take into account and only into account, the mental and physical pain shown by the evidence to have been suffered by her on account thereof, if any; and the impairment of her ability to earn money in the future, counting from this time, if any. You will not consider her husband as entitled to any damages, he being formally made a party to this action from the fact of having intermarried with her during the pendency of the action." This portion of the court's charge is erroneous as being on the weight of the evidence. The charge impliedly assumed that the injuries of the plaintiff were of a permanent character, when one of the issues in the case was whether they were trivial and temporary or permanent.

Twelfth Assignment of Error.—The court erred in giving section 2 of its main charge, as follows:

"If you believe from a preponderance of the evidence that the conductor in charge of the train on which the plaintiff, Edith L. Francis, and her companions were passengers, agreed with them to let them get off of the train at the register's office in Galveston; that thereupon the plaintiff, Edith L. Francis, started to alight from said train with the knowledge and consent of the said conductor; and that while in the act of so doing the train was started in sudden motion and the plaintiff, Edith L. Francis was thereby thrown from the steps of the train to the ground and injured in any of the respects alleged in her petition; and you further believe from the preponderance of the evidence that the starting of the train, if it was started, was negligence, as that term has been hereinbefore defined, and that such negligence, if any, was the direct cause of the said plaintiff, Edith L. Francis, being thrown from the car and

injured, if you find she was thrown therefrom and injured, you will return a verdict for plaintiffs; and unless you so find you will return a verdict for defendants."

The original petition, filed June 6, 1904, was offered in evidence to the jury. The petition upon which the suit was tried was the plaintiff's third amended original petition. The allegations of injury were altogether different in one from those in the other. Texas So. Ry. Co. v. Long, 35 Texas Civ. App., 339.

The court erred in overruling the objection of the defendants to the question propounded to the plaintiff's witnesses, Dr. J. G. Boyd, and permitting the said witness to make the following answer: "From the appearance of it, and the tenderness there was there and the condition of that transverse process, there was in those muscles on that side some pain and soreness, and they were tender to the touch." The question asked, following as it did one which was admitted by plaintiff's counsel to be of that nature, was clearly leading.

The court erred in refusing to allow the defendants to prove by the plaintiff's witness, Dr. P. C. Smith, that he concurred in the opinion of Dr. J. G. Boyd, his consulting physician, and another one of plaintiff's witnesses, in reference to the injury to the plaintiff's ankle. It was an improper interference with the latitude of cross-examination of an expert to prevent the defendants from testing this witness to see whether he concurred in the opinion of the physician who, at his request, had examined the plaintiff with him, and whom he had taken into consultation in the case, and if he differed, why he differed. Jones on the "Law of Evidence," secs. 391, 821; 3 Encyclopedia of Evidence, 858.

The court erred in allowing the plaintiff to answer over the objection of the defendant that it was leading, the following question propounded to her by her counsel: "What effect did it (the pain) have on your sleep or rest, if any?" and to make the following answer: "Sometimes I have night pains now."

*Lovejoy & Parker*, for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Edith L. Alberti against the Galveston, Houston & Henderson Railroad Company, and the International & Great Northern Railroad Company to recover damages for personal injuries alleged to have been inflicted by the negligence of defendants while she was a passenger on a train operated by them from Houston to Galveston under a joint passenger traffic agreement between them, under which they were jointly interested in the operation of the train. She alleged that she and other members of her family boarded said train at Houston, having purchased tickets entitling them to transportation thereon to Galveston; that she and her companions notified the conductor in charge when he took up their tickets they wanted to get off at what is known as the "Register Office" in Galveston, it being the point where defendants' line of railway enters Galveston Island, and where the train usually stopped before entering the Galveston depot. Whereupon the conductor agreed with plaintiff and her companions that

they might alight from the train at said office, and that the train would stop there, as was usual and customary.

That the train did stop at said Register Office, and the conductor there undertook to assist plaintiff and her companions to alight at that place, and while plaintiff was in the act of stepping off the train, it was suddenly started and plaintiff thrown to the ground and caused to fall several feet, in consequence of which she was seriously and permanently injured. The petition then sets out with great particularity the nature and character of the specific injuries sustained.

After interposing a general denial, each defendant pleaded:

1. That if plaintiff was hurt while alighting from a train, which was denied, she undertook without legal justification or excuse to leave the train at a place not intended for the delivery of passengers, or set aside or used for such purpose, and that she left the train at such place without authority or excuse therefor, and that if she was injured in so doing, which was denied, it was her own act and fault in so leaving said train, which caused such injuries, if any.

2. That neither plaintiff nor anyone with her, requested the conductor to let them get off the train at the place claimed in her petition; and that the conductor neither promised nor agreed to let them off at said place, and would not have done so, if requested. It also denied that the train had come to a stop, and while plaintiff was in the act of stepping off, it was started with a sudden motion; but averred, on the contrary, that the train only slowed up at the Registry Office for the purpose of putting off a registry ticket, and not for the purpose of putting off or taking on passengers, and that there was no person authorized to stop the train there, and that plaintiff, so seeing and understanding, nevertheless, jumped off while the train was in motion.

3. That if plaintiff was injured at the time and place alleged, her injuries were of a trivial character, and caused or contributed to by her own negligence, in the manner in which she undertook to leave the train, at and just preceding the time and place she so undertook to leave it, especially under the circumstances existing at the time.

4. That plaintiff jumped off the train at a place which was not a station for the delivery of passengers, which she knew was not such, and this act of negligence caused or contributed to her injuries.

5. That if plaintiff was injured, she was injured in jumping off the train after she had been told by the conductor not to do so, and that this act was negligence which caused her injuries.

6. That plaintiff undertook to leave the train while in motion, and this was negligence in her which caused or contributed to her injuries.

7. That plaintiff, if injured, was injured in jumping off the train at a place not intended and provided for the delivery of passengers, and she knew such fact, and jumped off the train while it was in motion, after she had been told by the conductor not to do

so, and that all these facts constituted negligence on her part, which caused or contributed to her injuries.

8. That if plaintiff was injured at all, she merely received a very trifling injury, which would have readily healed, if proper attention had been given it, in an attempt to make the injury appear greater than it really was, she did not take proper care of herself, thereby aggravating the injury, by not endeavoring to heal the same.

Pending the suit plaintiff married Sam W. Francis, who was joined with her, *pro forma*, as a party plaintiff and the suit, though retaining its original style on the docket, was prosecuted in their names.

The trial resulted in a verdict and judgment in favor of the plaintiffs for $6,500, from which both defendants have appealed.

*Conclusions of Fact.*—As there seems to have been no contention raised upon the trial that defendants, if liable at all, were not, by reason of the alleged traffic arrangement between them, jointly and severally liable for plaintiff's injuries; and as no such contention is made here, it will be assumed that the relation existing between defendants was such as made both and each of them liable for such negligence as may have been the proximate cause of the alleged injuries to plaintiff.

The evidence upon the controverted issues warrants the conclusion that, while plaintiff with other members of her mother's family was a passenger, en route from Houston to Galveston, Texas, on a train of the I. & G. N. R. R. Co., operated over the road of the G. H. & H. R. R. Company, the conductor of said train agreed with and promised her and her companions to stop the train and let them get off at the Register's Office in Galveston; that upon arriving in Galveston Island the train was stopped at said office and thereupon the plaintiff started to alight therefrom, with the knowledge and consent of the conductor, and while in the act of so doing the train was started with a sudden motion and she was thereby thrown from the steps of the car to the ground and seriously and permanently injured; that the starting of the train, without giving her sufficient time to get off, when plaintiff was in the act of alighting therefrom, was negligence and the direct cause of plaintiff's being thrown from the car and injured; that plaintiff was guilty of no act of negligence which proximately contributed to her injuries, but they were solely and proximately caused by said negligence of defendants; and that by reason of such negligence plaintiff was damaged in the sum of $6,500.

*Conclusions of Law.*—1. The first assignment of error complains that "The court erred in its charge as a whole, in undertaking to set out the plaintiff's pleadings and grounds of recovery and grounds of defense of defendants, and in wholly failing to state any part of defendants' pleadings and their several and various pleas of contributory negligence," etc. It is sufficient to say, in disposing of this assignment, that the court was not required to recite in its charge any more of the pleadings than it deemed necessary (Missouri, K.

& T. Ry. Co. v. Lehmberg, 75 Texas, 66; Missouri, K. & T. Ry. v. Parrot, 100 Texas, 9) ; and that if any of defendants' pleas were omitted which they deemed essential to a full preliminary statement of the pleadings, they should have requested a special charge supplying such omission. Galveston, H. & S. A. Ry. Co. v. Smith, 24 Texas Civ. App., 132.

2. The second assignment of error complains of the refusal of the following special charge: "You are instructed that if from the evidence you believe that the plaintiff was injured in leaving defendants' train at the register station in Galveston, and if you find that such injury was caused by negligence on the part of the defendants or either of them, and if you believe that she attempted to leave the train on which she was traveling at a place which was not a station for the delivery of passengers, and if you believe that her act in undertaking to leave the train at such place was negligence, that is, was the lack of ordinary care on her part, and that but for such negligence she would not have been injured then, in such a state of facts, if any, you will return a verdict for the defendants." We can not accede to appellee's counter proposition that, "Defendants nowhere alleged in their answer that plaintiff was guilty of negligence, because the place she undertook to get off *was not a station;*" for we apprehend that the first plea of defendants after the general denial (as numbered in our statement of their pleadings) raises the issue of negligence they sought to have submitted. If a passenger leaves a train, without the invitation of the conductor, at a place which is not a station for the delivery of passengers, there being no prior agreement on the part of the railway company that he may disembark there, and is injured in so doing, the question whether his act of leaving the train at such place was negligence would, ordinarily, be one of fact for the jury, and, when pleaded, should be submitted for its determination. But in this case, an agreement on the part of the defendants to discharge plaintiff from the train at the Register Office was pleaded by her and evidence introduced tending to prove such agreement, as well as their attempt through the conductor at such place to perform such agreement. The charge requested entirely eliminated such agreement and undertaking of defendants, and, if given, would have authorized a verdict against plaintiff upon the ground of contributory negligence merely because she undertook to leave the train at a place not provided for the discharge of passengers notwithstanding such agreement and undertaking on the part of the defendants. Therefore, the court did not err in refusing to give it.

3. The fourth special charge requested by defendants was as follows: "If from the evidence you believe that plaintiff received any injury in leaving the train of the defendant, the I. & G. N. R. R. Co., and if, from the evidence, you believe that plaintiff received said injury, if any you find, in jumping off of said train at a place not intended and provided for delivery of passengers, and that she knew said fact, and if, from the evidence, you believe that she jumped off of said train while the same was in motion, and after she had been told by the conductor not to do so, and if you believe that these

facts constituted negligence on her part, that is, a lack of ordinary care on her part, which contributed along with any negligence, if any, of the defendant I. & G. N. R. R. Co., if any you find, to cause such injury, that is to say, if you believe that plaintiff but for such negligence, if any, on her part, she would not have been injured, then, in such state of facts, if any, the plaintiff will be chargeable with contributory negligence, and you will, if you so find, find for the defendants." Its refusal is the subject of the third assignment of error. When stripped of its tautology, the meaning of the charge is: If plaintiff jumped from a moving train at a place she knew was not intended or provided for delivering passengers after being told by the conductor not to do so, and her act of jumping was negligence and such negligence contributed to her injury, she could not recover. In the main charge the jury was instructed if plaintiff, in undertaking to alight from the car while the train was in motion, jumped from the train while it was in motion, to return a verdict for defendant. This was more favorable to defendants than the special charge. For under it, it made no difference whether she jumped from the train at a place she knew was not intended or provided for delivering passengers, or was told not to do so by the conductor or not. Under it, if she jumped from the train while it was in motion she was precluded from recovering, even if it was at a place where passengers were discharged, and though the conductor may not have told her not to do so. The charge even pretermitted any question of her negligence, and made her jumping from a moving train negligence *per se*. Therefore, defendants were not prejudiced by the refusal of the special charge. Besides, the court instructed the jury at defendants' request that if plaintiff's injuries were received in jumping off defendants' train after she was told by the conductor not to do so, she could not recover.

4. There was no error in the court's refusal to instruct the jury at defendants' request, that if plaintiff received any injury at the time and place alleged, but that if such injury was caused or contributed to by the negligence on her part in the manner in which she undertook to leave the train, and in her undertaking to leave the train at the time and place she left it, to find for defendants. The acts of contributory negligence relied upon by defendants were specifically pleaded and every act of the plaintiff so pleaded by defendants as negligence was submitted to the jury, either in the court's main charge or the special charges given at defendants' request; and if the requested charge under consideration was so general as to include more acts of negligence on plaintiff's part than were pleaded it was properly refused. If it did not embrace more acts of negligence on her part than were specifically pleaded by defendants, it would, in effect, have been merely a repetition of instructions already given.

5. The fifth assignment of error complains of the court's refusal to give special charge No. 12, which undertakes to give a definition of the phrase "contributory negligence," as used in its charge. The phrase was not used anywhere in the court's main charge nor in any special charge given at the request of either party, though,

throughout the entire charge the jury was given to clearly understand that if plaintiff was guilty of such acts as would come within its meaning she could not recover, and to have given a definition of such term, as though it appeared in the charge, when it was not embraced, would have served rather to confuse than enlighten the jury.

6. Upon plaintiff's theory of the case, which finds support in the evidence, defendants' obligation was to stop the train and discharge her as a passenger at the Register Office; that it did stop the train there for the purpose of performing such obligation, but that before she had time to alight and while she was in the very act of stepping from the train, it was suddenly moved, and, in consequence, she was thrown to the ground and injured. If this theory is true, the sudden movement of the train was the cause of her injuries; and it seems to us that for a common carrier, without giving its passengers time to alight, to suddenly place its train in motion knowing at the time that one of its female passengers was in the act of stepping therefrom, would so clearly show the absence of that high degree of care due from such a carrier to its passenger as to make it negligence as a matter of law. Galveston, H. & S. A. Ry. v. Hubbard, 76 S. W. Rep., 764; Chicago, R. I. & T. Ry. v. Armes, 74 S. W. Rep., 77; Hutch. Carriers (3d ed.), 1118. Therefore the court, having in its main charge and by the special instructions given at defendants' request submitted all the issues of contributory negligence raised by the pleading and evidence, did not err in refusing to submit as an issue whether under *all the circumstances* of the case the sudden movement of the train was negligence on the part of the defendants; for this would have included circumstances about which, if proved, there could have been no question of defendants' negligence. Nor did the special charge referred to in the assignment suggest to the court a proper charge, such as it was error in the court to fail to prepare and give, as is complained of by the seventh assignment of error.

7. The eighth, ninth, tenth, thirteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth and twenty-fifth assignments, which respectively complain of the court's refusal to give the certain special charges in each respectively referred to, are overruled, because so much of such charges as is the law applicable to the case is included in the general charge or in special charges given at defendants' request.

8. The part of the court's charge complained of in the eleventh assignment was not on the weight of the evidence, nor did it impliedly assume that plaintiff's injuries were of a permanent character. This part of the charge, when read and construed in connection with the entire charge, was simply intended to state the elements of damages to be considered, if certain facts, which had been submitted to the jury, were found to exist. This also disposes of the twenty-fifth and twenty-sixth assignments of error which complain of the same part of the charges.

9. There was no error in that part of the court's charge referred to in the twelfth assignment of error. The reference therein to

plaintiff's petition could not have been understood by the jury as relating to any other pleading than the third amended original petition, upon which the case was tried. If the defendants apprehended that it might be taken by the jury as referring to any of plaintiff's abandoned pleadings, they should have requested a special charge, such as would have prevented the jury from making the mistake so apprehended.

10. We overrule the fourteenth assignment of error, because a party is not precluded from eliciting the truth from a witness by asking him a question which is unobjectionable in itself, because the previous question asked was objectionable as leading.

11. It was not error for the court to sustain an objection of plaintiff to a question asked by defendants of a doctor as to whether he concurred in a supposed opinion of another doctor as to the extent of the injury to plaintiff's ankle. Each witness could give his professional opinion as to the extent of the injury, and, if it was material to ascertain whether they coincided, the jury could then determine whether or not there was the usual difference between such professional gentlemen regarding the subject-matter of the inquiry as is found to exist in regard to other matters. This also disposes of the twenty-seventh assignment of error.

12. Dr. P. C. Smith was an expert, acquainted with the nature and character of the injury to plaintiff's ankle; and we can perceive no error in the court's permitting him to give as his opinion that she could not have used her limbs or ankle without the aid of crutches sooner than she did.

13. The question embodied in the seventeenth assignment of error was not leading, and there was no error in the court's permitting the witness to answer it over defendants' objection that it was.

14. If the jury believed the plaintiff's testimony, the verdict is not excessive. It was for the jury to determine what probative force should be given the testimony, and from it assess the damages.

15. It does not seem to us that "the verdict is so contrary to the physical facts and human experience, that we must say it is clearly wrong and set it aside," as is asserted by the proposition under the nineteenth assignment of error; and, not being able to sustain the proposition, we must overrule the assignment.

There is no error assigned which requires a reversal of the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.