## BANKERS LLOYDS v. MONTGOMERY.
### No. 876.

Court of Civil Appeals of Texas. Eastland.

Sept. 18, 1931.

Rehearing Denied Oct. 16, 1931.

Scarborough, Ely & King, of Abilene, for appellant.

Cox & Hayden, of Abilene, for appellee.

FUNDERBURK, J.

The suit is one by J. E. Montgomery against Bankers Lloyds to recover workmen's compensation for injuries received by him while an employee of Taylor Gin Company. From a judgment for plaintiff, the defendant has appealed.

Only two questions of law are presented for our decision. The first question arises upon the following state of facts: On August 31, 1929, or a day or two prior thereto, Johnny Cox, an insurance agent of Abilene, Tex., proposed to the Taylor Gin Company to procure for them, upon certain terms, a policy of compensation insurance. The proposal having been accepted, Cox, being without application blanks, made a memorandum in writing of the facts necessary to have the policy written, and agreed that the insurance

would be effective from that time. This memorandum was transmitted to Bankers Lloyds at its Dallas office, with a letter dated August 31, 1921, requesting that a policy be issued dated as of that day. The request was not received until September 3, 1929. Instead of immediately issuing a policy in compliance with the request, a formal application was prepared to be signed by the gin company, which, with a policy dated September 10, 1929, was sent to Cox to have the application signed and the policy delivered, which was done. The policy contained the following provision: "The period during which the policy shall remain in force, unless cancelled as in the policy provided, (herein called the Policy Period) shall be from August 31st, 1929, to August 31st, 1930, at twelve and one minute o'clock a. m. Standard time as to each of said dates, at the place where any operation covered hereby is conducted," etc. On the afternoon of August 31, 1929, Montgomery received the injury for which compensation is claimed. Cox had notice of the injury at least as early as September 2d. Other than the notice to Cox, Bankers Lloyds had no notice of the injury until after the policy was issued and delivered. Cox had no authority to issue policies of compensation insurance. There was no evidence or finding that he had authority to make any kind of a contract of compensation insurance.

■■ Under these facts, the appellant submits as a proposition that "the undisputed evidence before the court showed that the injury in question occurred prior to the issuance of the policy; therefore the court should have given appellant's requested instructed verdict because the policy was not in force at the time of the injury." It seems to be the position of appellant that its proposition is established by a showing that Cox had no authority to write a policy or bind the company upon a contract. We have, however, been unable to adopt this view. It is unquestionably true that, taking the formal written application and the policy written thereon, as constituting the contract, if any, upon which the recovery must be based, such contract was not in existence at the time of the injury. If the time the contract was in force was necessary to be determined alone from the date of the policy, or the time of its delivery, a very different question, no doubt, would be presented. But this policy expressly provides the period of time it was to be in force, and that included the time when the injury happened. The policy, therefore, on its face, purports to bind the company to a liability for injuries that might have occurred before the date of the policy or the time of delivery. The due execution and delivery of the contract of which the policy is the evidence is unchallenged. No issue in that regard is raised by questioning the authority of Cox. If it be granted that Cox had no authority

to make a contract of insurance, temporary or otherwise, it does not follow as a matter of law that the insurance company itself was without power to contract that the policy issued by it should cover liability for an injury occurring at a time prior to the date of the issuance and delivery of the policy. Whether Cox had any authority or not to bind the company to an agreement that the insurance should be in force from the time he took the informal application, the subsequent issuance of the policy, in effect, expressly so providing, eliminated any question of that agent's authority, or the materiality thereof.

In 32 C. J. 1097, it is said: "While a general agent may bind his principal by issuing a policy covering a known loss, either total or partial, this is true only where a contract of insurance has been concluded prior to the loss, and the policy is merely evidence of the contract; in the absence of special authority a general agent is without power to issue a policy for a known loss occurring before the terms of a contract of insurance has been settled upon." But no question of the authority of any general agent is presented. This statement of the law does imply the power to issue a policy with such a provision. If it be true that there was, prior to the issuance of the policy, no pre-existing contract of insurance at the time of the injury, there was an agreement to such effect, valid as a contract in all respects, save perhaps the want of authority in Cox to make it, which want of authority became immaterial when the same provision was expressly embodied in the policy. The insurer, in directing Cox as its agent to deliver the policy, which expressly covered a liability for any time subsequent to one minute after 12 o'clock a. m. August 31, 1929, was charged with knowledge that an injury may have occurred and a consequent liability already accrued. It had the means of protecting itself against that possibility by directing an investigation to ascertain if such was the fact, and, if found to be so, in declining to deliver the policy. Had that course been pursued, then the authority of Cox would have become a very material inquiry. But, as we have already said, as we view it, that question has been rendered immaterial. The proposition will therefore be overruled.

■■ The other question relates to the testimony of certain physicians, who, as witnesses, were permitted to testify, over the objection of appellant, one, that the injuries of the plaintiff were permanent, and that by reason of the injury the plaintiff's arm was totally incapacitated; another, that appellee could not do usual and customary manual labor; and still another, that the appellee was permanently and totally disabled. The common objection to the testimony was that same invaded the province of the jury and constituted an opinion on a question of law and fact that was to be determined by the jury. In

support of its contention, appellant only cites as authority the case of Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 36 L. R. A. 64. We do not regard the decision in that case as applicable. Whether the plaintiff's injuries were permanent, and whether same totally or partially incapacitated him, are questions of fact and not questions of law.

That the permanency or not of injuries is a proper subject of expert testimony has been recognized in many cases. Texas & P. Ry. Co. v. Sherer (Tex. Civ. App.) 183 S. W. 404; Missouri, K. & T. Ry. Co. v. Lynch, 40 Tex. Civ. App. 543, 90 S. W. 511; Chicago, R. I. & P. Ry. Co. v. Hiltibrand, 44 Tex. Civ. App. 614, 99 S. W. 707; King v. Ins. Ass'n (Tex. Civ. App.) 8 S.W.(2d) 560. In a note to Cross v. Syracuse (N. Y.) 21 Ann. Cas. 328, the editor precedes a long list of authorities on this question, with the statement that: "There seems to be no dissent from the rule that a physician or surgeon testifying as an expert may give his opinion as to whether the injury to the plaintiff is permanent or whether a recovery is probable."

No point is made that the rule would be different as to such testimony respecting incapacity resulting from injury. In Texas Employers' Insurance Ass'n v. Shilling (Tex. Civ. App.) 259 S. W. 236, it was held that expert testimony of a physician that the party was not incapacitated was admissible as against the objection that same was not the subject of expert testimony. In Galveston, H. & H. R. Co. v. Alberti, 47 Tex. Civ. App. 32, 103 S. W. 699, the court held that a physician, acquainted with the nature and character of an injury, could give his opinion that the injured person could have used her limbs or ankle without the aid of crutches sooner than she did. "Definite possibilities or probabilities as to whether a certain force or other cause may produce a given physical result," is a proper subject of expert testimony. 22 C. J. 545. In the late Kentucky case of Wakenva Coal Co. v. Combs, 232 Ky. 546, 24 S.W.(2d) 275, the subjects of permanency of injury and incapacity are recognized as being governed by the same rule. We are therefore of opinion that there was no error in the admission of the testimony.

We have concluded that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

### On Rehearing.

Appellant, in its motion for rehearing, in addition to its other assignments contending that we were in error in our decision and disposition of the case as shown by our original opinion, urges fundamental error in the judgment of the trial court. It is insisted that there was no pleading to support the verdict wherein the jury found, in response to a special issue submitted, that plaintiff's injury had resulted "in the total incapacity of the plaintiff J. E. Montgomery's right arm." If the record supports this contention, a fundamental error would be shown, as we held in Sivalls Motor Co. v. Chastain (Tex. Civ. App.) 5 S.W.(2d) 185, which appellant cites in support of its motion. While plaintiff's petition contains general allegations to the effect that plaintiff, by the alleged injury, had suffered a permanent disability and total incapacity, it was also alleged that, by virtue of the alleged injuries, "the plaintiff has a total permanent disability to his arm by virtue of said un-united fracture." Again it was alleged: "That by losing the use of said arm he is unable to hold employment or perform his usual and customary work as a laborer and carpenter, or any other kind of labor, and that he is not fitted for other employment except manual labor." These allegations are not inconsistent with the general averments of permanent and total incapacity. The issue submitted to the jury, and which is necessary to the support of the judgment, was: "Did such injury result in the total incapacity of the plaintiff J. E. Montgomery's right arm?" The jury made an affirmative finding upon this issue, and in response to another issue found that the injury would be permanent. No assignments question the form of the submission of these issues.

R. S. 1925, art. 8306, § 12, enumerates certain injuries, the compensation for which shall be in lieu of all other compensation except medical aid, hospital services, and medicines. One such specific injury is: "For the loss of an arm at or above the elbow, sixty per cent of the average weekly wage during two hundred weeks." It is also provided in the same article that: "In the foregoing enumerated cases of permanent, partial incapacity, it shall be considered that the permanent loss of the use of a member shall be equivalent to and draw the same compensation as the loss of that member."

We are therefore of opinion that the pleading was sufficient to support a verdict to the effect that plaintiff had suffered a permanent partial incapacity, in that he had lost the permanent use of his arm. We also think that, in the absence of objection to the form of the issues submitted, they are properly to be construed as calling for such findings.

Being of opinion that the motion for rehearing should be overruled, it is accordingly so ordered.