## MULKEY et al. v. TRADERS & GENERAL INS. CO.

### No. 1529.

Court of Civil Appeals of Texas. Eastland.

March 20, 1936.

Rehearing Denied May 1, 1936.

McLean & Thompson, of Fort Worth, and W. H. Penix, of Mineral Wells, for appellants.

Lightfoot & Robertson and Nelson Scurlock, all of Fort Worth, and Turner, Seaberry & Springer, of Eastland, for appellee.

LESLIE, Chief Justice. ·

This cause arises under the Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.). Frank Mulkey, Sr., was an employee of D. A. Upham, and the Traders & General Insurance Company was the insurer. Mulkey, while working at certain water wells near Mineral Wells, was killed June 2, 1934. The Industrial Accident Board rejected the claim for compensation. This suit was instituted by Mrs. Ethel Modrall Mulkey as surviving widow and as next friend for Frank Pierce Mulkey, Jr., minor son of the deceased, to set aside the action of the board. Upham, the employer, filed a plea of intervention in the suit in the district court. The defendant contested by plea in abatement his right to intervene, but the plea was overruled. At the conclusion of the evidence the court instructed a verdict in favor of the defendant and entered judgment accordingly. The plaintiffs appeal. D. A. Upham was doing business as the McLean Gas Company. (All italics herein used are the court's.)

By various assignments the appellants in substance make the contention that the terms of the policy covered the deceased at the time he met his death and the court erred in failing to so construe it; and that in the event the terms of the policy did not specifically cover him, the same should be reformed to include him at the time of his death in a group intended to be covered by the policy but omitted by mutual mistake.

The group of assignments presenting the first contention must be overruled for the following reasons: The terms of the policy are clear and disclose that it covered only the employees of Upham who were engaged in the gas business and clerical work connected therewith. The policy did not provide insurance for waterworks employees, of which Mulkey was one at the time of his accidental injury and death. The uncontradicted evidence shows that Upham's gas and water business were separate and distinct. Each carried different risks, different pay rolls, different code numbers, different rates of premium, and different employees. Mulkey's work was confined exclusively to common labor in connection with the water business, and he never performed any services as a clerk or laborer in the employer's gas business.

The gas business and the water business were a great distance apart. The employer's water business was in the vicinity of Mineral Wells, Tex. The gas business was specified to be at Paducah, Estelline, Newlin, Tell, McLean, Tex., and elsewhere in Texas. The nearest of the counties containing either of these points was 175 miles from Mineral Wells and the most distant 325 miles therefrom.

Upham did not own the water wells, from which he manufactured and sold crystals, when the first policy of insurance was taken out by him. Several months after the date of that policy, he acquired the waterworks and he operated the same

from June, 1933, until March, 1934, without making any effort to have the original policy changed or a rider attached thereto, so as to protect waterworks employees. The renewal policy, under which compensation is here claimed, was issued in March, 1934, upon the original application and no provision is made in said policy for insurance to protect employees engaged in such water business. The defendant had no notice or knowledge that the employer was engaged in the water business until after the death of Mulkey.

Under the terms of the policy and the undisputed state of the testimony, the court did not err in instructing a verdict in favor of the defendant. It is uniformly held in this state than an employer operating under the Workmen's Compensation Act cannot cover part of his employees and leave part of them uncovered, where such employees are engaged in the same general class of business; but it is also as uniformly held that such employer who conducts two separate and distinct kinds of business involving different risks, pay rolls, premiums, etc., may elect to insure his employees in one such business and not those engaged in the other. Here the employer elected to cover with insurance his employees engaged in the gas business and not those engaged in the water business. The specific terms of the policy control. Hence, under the following authorities, the deceased employee Mulkey was not, at the time of his death, in the usual course of his employer's business as defined and declared in said policy. Standard Accident Ins. Co. v. Barron (Tex.Civ.App.) 47 S.W.(2d) 380, error refused, written opinion, 122 Tex. 179, 53 S.W.(2d) 769; Federal Surety Co. v. Jetton (Tex.Com.App.) 44 S.W.(2d) 923; Texas Emp. Ins. Ass'n v. Jones (Tex. Civ.App.) 70 S.W.(2d) 1014; New Amsterdam Cas. Co. v. Hosch (Tex.Civ.App.) 78 S.W.(2d) 633; United States Fidelity & Guaranty Co. v. Bullard Gin & Mill Co. (Tex.Civ.App.) 245 S.W. 720; Barta v. Texas Reciprocal Ins. Ass'n (Tex.Civ.App.) 67 S.W.(2d) 433; Buice et al. v. Service Mut. Ins. Co. (Tex.Civ.App.) 90 S.W.(2d) 342. These conclusions will be further substantiated by the additional statement from the record and the discussion of authorities we shall make in the disposition of the next group of assignments presenting the question of the right of appellants to reform the contract.

By his plea of intervention Upham attempted to allege "an oral agreement between himself and the soliciting agent Mason," relative to the policy sued upon, and to the effect that it was intended to cover employees in the water business the same as employees in the gas business and clerks connected therewith. As noted, the court overruled the defendant's plea in abatement contesting Upham's right to intervene in the suit for the first time in the district court, since he was not a party to the proceedings before the Industrial Accident Board, etc. The plaintiffs adopted said allegations in Upham's plea of intervention, and the defendant, by verified pleading, replied to the same by alleging that the soliciting agents, Bullington & Mason, had no authority to issue for it a compensation policy, or to make any agreement or contract not contained in the policy or authorized by the written agency agreement.

Bullington & Mason's agency agreement with the defendant contained, among other things: "8. That the Company shall have the right at any time to reject any risks submitted and the agent shall not be entitled to any commission on any such risks and *that the agent shall have no authority to make, add to, or in any manner alter any policy of insurance or other contract affecting the company, nor to waive any of the Company's rights thereunder.*" It further provided "that he (agent) will report daily * * * all applications for policies * * * ."

In that connection Mason, of the firm of Bullington & Mason, testified: "The Company had the right to reject or accept that application. * * * I knew I couldn't change any written portion of that contract." That he did not attempt to issue any policy on an application, but sent applications to the Dallas office. That all compensation policies were kept in the home office in Dallas and that his agency had no policies in their possession. In these respects Abright, vice president of the defendant, corroborated Mason's testimony, further stating that no blank indorsements or riders were ever furnished to the agency and that its duties were limited to soliciting business. As before noted, the application for insurance and the original policy specified places of operation of the gas business and in the declarations thereof (item 3) gave the code numbers and specifications of the different classes of employees covered as follows: Code No. 7502 covered *natural gas companies,* all operations. Code No. 8810 covered *clerical employees* therein.

Item 4 of said declarations specified that: "The foregoing enumeration and description of employees include all persons employed in the service of the employer in connection with the *business operations above described* * * *." Item 5 of the declarations stated: "This employer is conducting no other business operations at this or any other location not here described—except as herein stated: *NO EXCEPTIONS.*"

The policy here involved, dated February 19, 1934, is headed as follows: "Policy No. WC 2480 DECLARATIONS RENEWING OLD (POLICY) NO. WC 1572." Policy 1572 was the first and expiring policy. Item 1 (2480) specified: "Name of this employer D. A. Upham dba McLean Gas Company, P. O. address Mineral Wells, Texas."

Item 2, term of policy, March 10, 1934, to March 10, 1935, stated the *gas operations* to be at Paducah, Estelline, Newlin, Tell, and McLean and elsewhere in Texas. Item 3 specified: "All business operations * * * conducted at or from the locations and premises defined above *as declared in each instance* * * *." Item 3 declares "a *classification of operations*" as follows:

"1 (a)

"7502 NATURAL GAS COMPANY * * * all operations in connection with local distribution * * *.

"8810-CLERICAL OFFICE EMPLOYEES * * *." "These indorsement attached to policy."

This item contains estimates, rates, etc., unnecessary to be stated here.

Item 5 of the policy stipulated: "This employer is conducting no other business operations at this or any other location not here disclosed * * *."

The policy further provides:

"This agreement is subject to the following conditions:

"A. The premium is based upon the entire remuneration earned during the policy period by all employees of this employer *engaged in the business operations described in said declarations together with all operations necessary, incident or* pertinent thereto * * *." Operations were here limited to "any operations as above defined * * *."

"L. No condition or provision of this policy shall be waived or altered except by indorsement attached thereto, signed by the President, a Vice-President, Secretary or Assistant Secretary of the Company, nor shall notice to any agent, nor shall knowledge possessed by any agent or by any other person be held to effect a waiver or a change in any part of this contract. * * *

"M. The statements in items 1 to 7, inclusive, in the declarations hereinafter contained are true; * * *."

This last policy (2480) was delivered to the employer Upham and held by him without protest of any kind, or suggestion upon his part of any character of inaccuracy, or omission in the same until after the death of the employee.

On May 2, 1934, one month before the accident, and almost two months after the policy was delivered to Upham, the defendant sent its auditor to Mineral Wells to audit Upham's books for the preceding year to determine the actual premium earned for that period. The auditor made his written report based upon information furnished him by Upham's bookkeeper. The audit was signed and approved by M. P. Hines, the executive secretary of Upham, and a copy of that report was left with the employer. The audit covered pay rolls for employees in the gas business and clerks in connection therewith. He had no instructions to audit pay rolls of the waterworks business. That business and the employees therein had not been called to the attention of the defendant, and it had had no occasion to inspect the business and the hazard involved.

In fixing the rate to be charged as a premium with corresponding code numbers, the State Insurance Department, pursuant to article 4907, R.S.1925, as amended by Acts 1931, c. 171, § 1 (Vernon's Ann.Civ. St. art. 4907), prepared a manual for computing the premiums under compensation policies. According to the manual, Code No. 7502 covered employees in the gas business and carried a normal rate of $2.59 per $100. Code No. 8810 covered clerical employees and carried a normal rate of 8 cents per $100. As before noted, the code number which would have been assigned to water works employees was 4503 with a normal rate of $3.68 per $100 of pay roll, but in Upham's case and based upon his "experience record" the rate would have been $6.37 per $100 for waterworks employees.

It is unnecessary to further lengthen the opinion by specific statements from the testimony, but we think the record as a

whole affords no basis for the reformation of the policy so as to include within its terms the employees engaged in the water business. It clearly refutes such contention. A correct answer to such contention involves an understanding of the authority of Bullington & Mason who took Upham's application for insurance covering the gas employees and clerks in connection therewith. Clearly, they were merely soliciting agents. Their only authority was to solicit applications for insurance and submit the same to the defendant at its executive office at Dallas for acceptance or rejection. The right to issue or alter a policy was specifically reserved by the company and lodged with its executive officers.

The authority of Bullington & Mason was that which is usual in the case of soliciting agents and aptly stated in 32 C.J. p. 1067, as follows: "A soliciting agent is merely a special agent, and as a general rule, has authority only to solicit insurance, submit applications therefor to the company, and perform such acts as are incident to that power. He may bind the company by agreements and representations properly made in connection with the application for insurance, but ordinarily has no authority to bind it by attempted acts or contracts in its behalf, relating not to the taking of the application, but to the subsequent contract of insurance, or to other matters not connected with the application and not within the real or apparent scope of his authority, such as the appointment of other agents."

These soliciting agents being without authority to make, alter, or waive any provision of the policy, it is obvious that the defendant would not be bound by the alleged oral conversation or agreement purporting to have occurred between Upham's agent and the soliciting agents. Southern Surety Co. v. Benton (Tex.Com.App.) 280 S.W. 551. The agency agreement and the terms of the policy withheld from said agents any such authority to bind the defendant. All the evidence is to that effect.

In Bankers Lloyds v. Montgomery, 60 S.W.(2d) 201, appealed from this court [42 S.W.(2d) 285], the Supreme Court in an opinion by Judge Sharp held that when the powers of an agent are limited to receiving and forwarding applications for insurance he cannot make binding contracts for insurer. In that case the agent, being without application blanks, made a memorandum in writing of the facts necessary to have the policy written, and also *agreed that the insurance would be in effect from that date.* Before the policy was delivered, Montgomery sustained an injury of which the insurance company had no knowledge. The facts being undisputed, the Supreme Court held that an instructed verdict was warranted and reversed and rendered judgment. There, as here, the controlling proposition was the authority of the soliciting agent to bind the principal by a contract of insurance.

The rule of law applied in the Montgomery Case was approved by the Supreme Court in the opinion by Judge Critz in American National Ins. Co. v. Huey, 66 S. W.(2d) 690, 692, where that court made a like disposition of the appeal. There the plaintiff sought to recover damages by reason of alleged fraudulent misrepresentations made to him by a mere soliciting agent of the defendant company. The very clear statement in that opinion is that the well-settled rule in the Montgomery Case would be destroyed by the expediency of the damage suit as thus presented. The statement is: "If there is any authority holding that an action can be maintained against an insurance company, *either to reform a policy* or for damages according to the measure here sought to be applied, on account of misrepresentations made by a mere soliciting agent, such authority has not been pointed out to us, and we have found none after diligent search."

Of course, we are not here considering a case where an employer undertakes to insure only a part of his employees engaged in the same general class of business. It is well settled he cannot do that and that a policy issued in such a case will cover all of the employees in such class of business. Here the unfortunate employee lost his life while engaged in a business in no respect covered by the policy, and in all respects separate and distinct from the gas business. We find nothing in the facts of the case or the controlling rules of law by which the deceased can be brought within the provisions of the policy involved.

The agency agreement, the application, and the policy speak for themselves. These and the uncontradicted testimony generally under the authorities cited are not only decisive of this appeal, and the contentions presented, but the statutes themselves clearly attest the ineffectiveness of any oral understanding with the soliciting agent to bind the defendant under the terms of a policy of insurance. Reference is here made to articles 4907 to 4913, inclusive, R.S.1925

(as amended, Vernon's Ann.Civ.St. arts. 4907–4913). Article 4907 (as amended by Acts 1931, c. 171, § 1, Vernon's Ann.Civ. St. art. 4907) provides that the Insurance Commissioner of Texas "shall make, establish and promulgate all classifications of hazards and rates of premium respectively applicable to each"; article 4908 prescribes standard forms; article 4911 provides for the determination of experience rating; and article 4913 provides that "any contract or agreement not written into the application and policy shall be void and of no effect and in violation of the provisions of this chapter, and shall be sufficient cause for revocation of license to write workmen's compensation insurance within this State."

Perforce of the authorities, and statutes as well, we conclude that the oral understanding, if any, was under the facts of this case without any binding effect as an insurance contract upon the defendant.

In view of the disposition made of this appeal, it becomes unnecessary to determine the questions presented by appellee's cross-assignments of error.

For the reasons assigned, the judgment of the trial court is affirmed.