Evalyn Mae POEHLS, Individually and as
next friend for Nita Ann Poehls
et al., Appellants,

v.

TEXAS EMPLOYERS' INSURANCE
ASSOCIATION, Appellee.

No. 11218.

Court of Civil Appeals of Texas.

Austin.

July 22, 1964.

Rehearing Denied Aug. 19, 1964.

Bedford & Underwood, Paul Petty, Ballinger, for appellants.

Hardeman, Smith & Foy, San Angelo, for appellee.

HUGHES, Justice.

This is a Workmen's Compensation case in which each party made a motion for summary judgment. The motion of appellee, Texas Employers' Insurance Association, was granted. The motion of Evalyn Mae Poehls, individually and as next friend for her three minor children, appellants, was denied.

Charles Lindy Poehls, the husband and father, respectively, of appellants was accidently killed on February 28, 1963, while driving a butane truck. On such date he

was employed by Eugene A. Kasberg. On such date there was in force a workmen's compensation insurance policy issued by appellee to "Eugene A. Kasberg dba Miles Gin Company." On such date Mr. Kasberg was the sole owner and operator of the Miles Gin Company. On such date Mr. Kasberg also operated a butane sales and service business under the name of "Kasberg Butane Sales Company."

Mr. Poehls worked for Mr. Kasberg in and about the gin and as a butane truck driver and route salesman. His principal duty at the gin was to haul cotton seed. This seed was purchased by Mr. Kasberg when the cotton was ginned and later sold by him to various oil mills around the country. Mr. Poehls hauled this seed to those mills. When not hauling seed, Mr. Poehls did other work about the gin. He was the only year-round employe of Mr. Kasberg.

In his butane business, Mr. Kasberg maintained regular routes. Mr. Poehls was his route salesman. His duties were to visit the various customers, check their butane storage tanks and to sell and deliver to them the butane needed.

The butane business is regulated by the Railroad Commission, and a license is required. Mr. Kasberg had the required license. Mr. Poehls also was required to pass an examination as a butane truck driver and he complied with this requirement.

Mr. Poehls was paid by the hour for his gin work. He was paid a commission for his work in the butane business.

Mr. Kasberg kept one set of books and made but one income tax return. He did not separate the gin business from the butane business.

Butane gas was not used as fuel for operation of the gin, although a small amount of butane was used in a tractor used for gin purposes. This butane was obtained from a bob-tail unit used in the butane business.

Mr. Kasberg testified:

"Q Mr. Kasberg, is there any necessity in the operation of your gin for you to also make butane sales to farmers?

"A I use that butane sales to keep in contact with farmers through the year, and that way I get the ginning from them in the Fall.

"Q You also make a profit on your butane sales?

"A Oh, yes.

"Q Many gins are operated without selling them butane, are they not?

"A Oh, Yes.

"Q And you could very well operate your gin without making butane sales?

"A Yes.

"Q And you could very well operate the gin without making butane deliveries to farmers, could you not?

"A Yes."

When killed, Mr. Poehls was driving a butane truck owned by Mr. Kasberg and he was then engaged in servicing the route as a salesman for Mr. Kasberg.

The Railroad Commission of Texas requires a butane operator to carry either workmen's compensation insurance or liability insurance on his employes. Mr. Poehls was the only employe which Mr. Kasberg had in his butane business and he carried employer's liability insurance on Mr. Poehls with the Western Alliance Insurance Company. This policy was issued to "Eugene A. Kasberg dba Kasberg Butane Sales Company" and the classification of operations covered by it include the work in which Mr. Poehls was engaged at the time of his death. This policy bore a Dividend Risk Endorsement which expressly excluded from its coverage operations of the insured in the business of "Cotton Gins."

The policy in suit, issued by appellee, was a workmen's compensation insurance policy issued to Eugene A. Kasberg dba Miles Gin Company, as the insured, and it insured the employes of Mr. Kasberg falling within this "classification of operations:"

"0401—Cotton Gins—all employees, engaged in the operation of gin, installation and repair of equipment, maintenance and repair of buildings including clerical, yardmen, seed and fuel haulers.

$3,000.00   9.26   277.80

"The intent of the above wording is to include at one rate, clerical and/or drivers payroll as well as the payroll of every person employed in or about the gin both during the ginning season and the dormant season."

---

This policy had a Divided Risk Endorsement which reads, in part:

"OPERATIONS EXCLUDED:

"1. Operations in a business separate from the business in which the Texas operations described in the declarations are conducted:

"2. Operations in the business described in the declarations but covered by the policy of another insurer:

" 'Operations of Eugene Kasberg dba Kasberg Butane' (Dealers National Ins., Policy WC–504409, May 24, 1962/63.''

---

The reference to the Dealers National Insurance Company policy in the above endorsement is inaccurate in reciting the policy number. Then in force was Dealers National Insurance Company policy No. W.C.204409. This policy had attached a Divided Risk Endorsement which read, in part: "OPERATIONS EXCLUDED 1. Operations in a business separate from the business in which Texas operations in the declarations are conducted: Cotton Gins."

As previously stated, the insurance policy in force covering the employes (1) of Mr. Kasberg in his butane business, at the time of Mr. Poehl's death, was with Western Alliance Insurance Company.

Appellants would have us convert the Divided. Risk Endorsement purporting to *exclude* certain operations recited to be described in the policy declarations but covered by other insurance into an endorsement *including* those operations. Their reasons for so doing are that the Dealers policy referred to was not and never had been in existence and such endorsement, prepared by appellee, constituted a recognition and admission by appellee that Mr. Kasberg had only one business and Mr. Poehls was within the coverage of the policy in suit.

We cannot subscribe to either of these contentions. The obvious purpose of the endorsement was to exclude business operations in which Mr. Kasberg was engaged which were "covered by the policy of another insurer." These operations were expressly stated in the endorsement to be the operations of Mr. Kasberg "dba Kasberg Butane." The fact that the endorsement gave an incorrect number to the policy then in force and that the insurance carrier for Mr. Kasberg's butane business was sub-

sequently changed is, in our opinion, immaterial and insufficient to alter the plainly stated purpose of the endorsement. The name of the insurance carrier and the number of the policy were but incidental to the objective of the endorsement.

We also consider as irrelevant, in considering the effect of this Divided Risk Endorsement, the recitation that the business operations excluded were described in the policy declarations. It would not matter that such operations were described in the policy declarations if they have been properly excluded from coverage by the Divided Risk Endorsement. Of course, if the business operations purportedly excluded were never included within the policy declarations, there was nothing to exclude in the Endorsement. If this were a case of doubtful construction of the policy declaration as applied to the facts, we undoubtedly would consider the recitation in the endorsement that such policy declarations covered the butane business of Mr. Kasberg, and that he had but one business. We entertain no doubt that Mr. Kasberg had two distinct businesses, a gin business and a butane business, and that appellee insured only the gin business.

· [3]   We quote the following from appellants' brief:

"'The Defendant's Workmen's Compensation Policy itself shows on its face that the Defendant Insurer did not consider that the insured was conducting any other separate business for the reason that said policy, in the declarations, contains Paragraph 7, which we quote:

"The insured is not conducting other operations at or from the locations described herein or any operations at or from any other location in a state designated in Item 3, except as herein stated: * '

"Below, on the face of said policy, the asterisk is shown to mean, 'Absence of entry indicates "No exceptions".'

This shows that the Defendant Insurer recognized that the butane storage and delivery on the gin premises was not a separate business."

Appellants also direct our attention to the definition of "employee" as contained in Art. 8309, Sec. 1, and particularly to the language added by amendment in 1937 so as to include within the definition of employes those employes who are employed in the usual occupation of an employer but who are temporarily directed by the employer to perform services outside the usual course of such occupation.

It is our opinion that the decision in this case is controlled by Pacific Indemnity Company v. Jones, 160 Tex. 164, 327 S.W.2d 441, and the cases therein cited and approved.

While, as held in Barron v. Standard Acc. Ins. Co., 122 Tex. 179, 53 S.W.2d 769, cited in Jones, an employer under the Workmen's Compensation Act cannot cover part of his employes and leave part uncovered when they are engaged in the same general business or enterprise, an employer engaged in two or more separate and distinct kinds of business "may elect to insure a class of employees in one business and not insure a class of employees in the other business."

We quote from Jones its analysis of two decisions which we deem to be of such factual similarity to this case as to be indistinguishable:

"In United States Fidelity & Guaranty Co. v. Bullard Gin & Mill Co., Tex. Civ.App., 245 S.W. 720, 721, no writ history, an insurer sought a recovery of additional premiums on the ground that its policy covering the employer's 'cotton ginning and pressing' business also covered the same employer's box factory located some 150 yards from the gin.   Recovery was denied.   In Barta v. Texas Reciprocal Ins. Co., Tex.Civ.App., 67 S.W.2d 433, writ refused, it was held that compensation benefits could not be recovered from

an insurer of an employer's gin employees for the death of the employer's employee working at a corn sheller on the same premises. In Buice v. Service Mutual Ins. Co., Tex.Civ.App., 90 S.W.2d 342, writ refused, the employer was engaged in the gin business, as a farmer, in threshing grain for the public and in general repair work. Compensation benefits were sought for the death of an employee while engaged in repairing the employer's binder located some four or five hundred yards from the employer's gin. The insurer's policy covered only employees engaged in the gin operation. Recovery was denied. There can be no doubt that those cases were correctly decided under the rule of the Barron case, and in the two (Barta and Buice) decided after 1927 we refused writ of error thereby making them as authoritative as our own decisions."

The Court in Jones also cited and quoted from, approvingly, the case of Merrick v. Street, 91 S.W.2d 851, Fort Worth Civ. App., writ ref., wherein it is stated that the Workmen's Compensation "law was intended to protect employees who are engaged in the same enterprise."

It is our opinion that the evidence conclusively shows that Mr. Kasberg was engaged in two separate businesses and enterprises, the gin business and the butane business. There was no connection between the two, direct or indirect, although the butane business may have helped to create or maintain a friendly relationship between Mr. Kasberg and potential customers of his gin.

Since Mr. Poehls did haul fuel and since he did drive a truck and since both activities are described in the policy declaration, appellants say he is covered by the policy. This simple solution of the case would do violence to the judicial concept that the Workmen's Compensation Insurance Act was intended to protect employes engaged in the same enterprise.

Appellants cite Maryland Casualty Company v. Sullivan, 160 Tex. 592, 334 S.W.2d 783 wherein it was held:

"In view of the interrelated and commingled character of financing and bookkeeping of the two businesses— Bavousett Fertilizer & Chemical Co. and Better Crop Dusters Co., we cannot say that they were two separate and distinct kinds of business. They were so managed and operated by Bavousett as to amount to different phases of the same class or kind of business; viz., selling and applying chemicals and insecticides. Under the record we hold that Sullivan was covered by the petitioner's policy."

The gin and butane business have nothing in common. The basic commodity of one is cotton. The service performed is the separation of the lint from the seed. This is done at the gin. No butane is utilized in this process. The basic commodity of the other business is butane gas or a mixture called "butane," which is used as fuel. It is transported and sold to farmers and ranchers on routes regularly serviced. Neither business is dependent upon the other for anything. They are completely unrelated. We do not believe the factual situation here is comparable to the situation in Sullivan, supra. Even there, two of the Justices dissented on the ground that there were separate businesses.

Finally, appellants say that the Divided Risk Endorsement on the policy in suit should not be considered by us because there is no showing by appellee that such endorsement was ever approved by the State Insurance Board as required by Art. 5.57, Texas Insurance Code, V.A.T.S.

Appellants are in no position to make this contention. The policy is marked by the reporter "P 3" which indicates that appellants introduced it into the record. The record does not indicate appellants made any reservations in so introducing it.

Furthermore, this case was tried upon a stipulation of the parties which provided, in part, that the record on appeal should consist of "the original deposition of Eugene A. Kasberg and the exhibits attached thereto." The policy sued on was one of such exhibits and the endorsement was a part of such policy.

The judgment of the Trial Court is affirmed.

Affirmed.