MARYLAND CASUALTY COMPANY V. MARION J. SULLIVAN ET AL.

No. A-7507. Decided April 13, 1960.
Rehearing Overruled May 18, 1960.
(334 S.W. 2d Series 783)

*Kemp, Smith, Brown, Goggin & White* and *William Duncan,* all of El Paso, for petitioner.

The Court of Civil Appeals erred in holding that "in the absence of any exclusion from liability by reason of death or injury to an employee resulting from operation of aircraft," "the deceased employee was covered by the terms of the policy." United States Fidelity & Guaranty Co. v. Bullard Gin & Mill Co., 245 S.W. 720; Buice v. Mutual Ins. Co., 90 S.W. 2d 342; Gulf, C. &S. F. Ry. Co. v. Deen, 158 Texas 466, 212 S.W. 2d 933.

*Fryer, Milstead & Luscombe* and *John B. Luscombe,* of El Paso, for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a workmen's compensation case.

Paul W. Sullivan, husband of respondent, Marion J. Sullivan and father of the four minor children for whom Mrs. Sullivan appears as next friend, was killed in an airplane accident in El Paso County, Texas on July 29, 1954, only a few days after he was employed.

Mrs. Sullivan, on behalf of herself and her children, all of whom will hereafter be referred to as Respondents, presented a claim to the Industrial Accident Board for death benefits under the Workmen's Compensation Act. She alleged that her deceased husband was employed by one John S. Bavousett at the time of his death, and that Bavousett was insured under the Workmen's Compensation Act by Maryland Casualty Company, hereafter referred to as Petitioner. The Board denied Respondents recovery. Respondents appealed to the District Court of El Paso County, and in a trial before a jury, they recovered the death benefits claimed. On appeal, the Court of Civil Appeals affirmed the trial court's judgment. 326 S.W. 2d 729.

Deceased, Sullivan, had been employed as a pilot to operate an airplane to spray and spread chemicals over growing crops.

On July 26, 1955 Bavousett was also killed in an airplane accident while dusting crops. As a result of their deaths no witness testified at the trial as to the contract of employment which Bavousett had made with Sullivan at the time Sullivan was employed. Bavousett was sole owner of Bavousett Fertilizer & Chemical Co. which company sold fertilizer and various other agricultural chemicals. No books or records of the Company were available at the trial of this cause, and for whom Sullivan worked could only be established by circumstances.

We will set out these circumstances in connection with our discussion of the points of error raised by Petitioner. In addition to owning the Fertilizer and Chemical Co., which office was located in Clint, Texas, Bavousett was a joint owner with his brother of Pioneer Chemical Company, Inc., located at Dell City, Texas, which was a corporation owning airplanes and engaging in crop dusting. Pioneer Chemical Company, Inc. is not involved in this litigation. Bavousett and the estate of his first wife and their children owned Better Crop Dusters Company, a corporation, which also owned airplanes and operated these planes from Fabens Airport for dusting crops. Bavousett was the manager and controlling stockholder of Better Crop Dusters Co. The evidence shows that the books and records of both Better Crop Dusters Co. and Bavousett Fertilizer & Chemical Co. were kept in the same office, and by the same personnel in Clint, Texas. The record also discloses that the financial affairs of Bavousett Fertilizer & Chemical Co. and Better Crop Dusters Co. were interwoven and intermingled to the extent that one organization might be out of funds at any particular time and in such event the other organization would pay all bills of both companies out of the paying organization's bank account and charge the amount paid to the account of the delinquent organization. As money was received by the joint office it would be credited to the account of the debtor organization at that particular time. All statements, or bill, for chemicals and their application by airplane were sent out on billheadts of the Bavousett Fertilizer & Chemical Co. As the bills were paid, the money was credited to the particular organization designated by Mr. Bavousett. A separate set of books was kept for each organization.

Some three or four days after deceased was employed by Mr. Bavousett, Mr. J. G. Britton, a farmer of the Lower Valley area. saw Mr. Bavousett on the streets of Clint, Texas, and he testified "I contacted John Bavousett to apply insecticides" to his cotton crop. The insecticide used was known as "2-10-40."

An airplane piloted by Sullivan came to Mr. Britton's farm to apply this insecticide and in the course of the application the plane fell to earth and Sullivan was killed. Later Mr. Britton received three statements covering the price to be paid for both the "2-10-40" insecticde, and the application of same to the crop. These bills were each on a billhead as follows:

"PHONE 2171                                          BOX 104

BAVOUSETT

Fertilizer & Chemical Co.

INSECTICIDES - FERTILIZERS - FUNGICIDES

HORMONES - WEED SPRAYS - DUSTERS

CLINT                                               TEXAS"

Each bill then set out the name of the debtor—Mr. J. G. Britton; the date on which the insecticide was applied and the amount; e.g., "7-28   200# 2-10-40 & App." One of the bills in addition to the item of the insecticide and its application, contained charges for other chemicals not applied by the plane. The evidence is that the "2-10-40" only was applied by plane and the "App." was the charge for appling the chemical to the crops by plane. The bills did not separate the charges for the insecticide and the application.

Mr. Britton paid these bills with one check made payable to Bavousett Fertilizer & Chemical Co. This check was cashed and bore the endorsement of Bavousett Fertilizer & Chemical Co. Mrs. Bavousett testified that she was the bookkeeper for both companies and that the proceeds of the check were credited to the Bavousett Fertilizer & Chemical Co. and the Better Crop Dusters Co. in accordance with the instruction of Mr. Bavousett. She also testified that no separate bills were rendered; that in all instances the Fertilizer & Chemical Co. sold the chemicals to Better Crop Dusters Co. and the Better Crop Dusters Co. applied the chemicals and insecticides; that the pilot of the plane reported to Mr. Bavousett the amount of chemicals or insecticides applied and the pilot was paid for the application accordingly.

Petitioner has ten points of error, pertaining to two legal questions: (1) Was there evidence to support the jury finding

that Sullivan was an employee of Bavousett Fertilizer & Chemical Co., and (2) was Sullivan covered by the provisions of Petitioner's policy issued to Bavousett Fertilizer & Chemical Co.? To each of these questions we answer in the affirmative and affirm the Court of Civil Appeals.

There was no direct testimony as to which of Mr. Bavousett's three companies hired Sullivan. The only circumstance in the record indicating he was working for Better Crop Dusters Co. is that he was killed applying insecticides by airplane, and that some few days after Sullivan's death, Mr. Bavousett drew a check on the account of Better Crop Dusters Co. for the sum of $89.60 payable to Paul W. Sullivan. This check was drawn on the First National Bank of Fabens, Texas, and contained the notation "For 5 days labor Plus 30% Com 3300# application. Full payment of labor." This check was cashed by Mrs. Sullivan.

Against this evidence we have the contract between J. G. Britton and John Bavousett, the bills submitted to Britton which showed that Bavousett was "dusters;" the fact that Bavousett received the money for the work done by Sullivan, together with the money for the chemicals; that the bills submitted made one charge for the chemicals and their application; the admitted fact that Bavousett Fertilizer & Chemical Co. did apply some chemicals and insecticides with one of its employees using a tractor for the application; and the further fact that the business of Bavousett Fertilizer & Chemical Co. and Better Crop Dusters Co. was transacted from the same office and their finances were jointly operated. We hold that there is evidence to sustain the jury's finding that Sullivan was an employee of Bavousett Fertilizer & Chemical Co.

**1,2** Now we come to the question of whether or not the coverage under Petitioner's workmen's compensation insurance issued by it to Bavousett Fertilizer & Chemical Co. covered the deceased Sullivan. While it is true that an employer who operates two or more separate and distinct businesses is not required to secure workmen's compensation insurance for all the employees of both businesses, we understand the true rule to be that where an employer procures coverage for a part of his employees under the Workmen's Compensation Act, this coverage will extend to all the other of his employees who work in the same general class of business. Buice v. Service Mut. Ins. Co., Texas Civ. App., 1936, 90 S.W. 2d 342, (1-3), wr. ref., and authorities there cited. However, it is also held that an employee

falls outside the coverage secured by an employer if the employer conducts two separate and distinct kinds of business, each of which involves different risks, payrolls and premium rates because the employer can exercise election as to which employees he desires covered. Mulkey v. Traders & General Ins. Co., Texas Civ. App., 1936, 93 S.W. 2d 582, wr. ref.; Barron v. Standard Acc. Ins. Co., 122 Texas 179, 53 S.W. 2d 769 (1932). In view of the interrelated and commingled character of financing and bookkeeping of the two businesses—Bavousett Fertilizer & Chemical Co. and Better Crop Dusters Co., we cannot say that they were two *separate* and *distinct* kinds of business. They were so managed and operated by Bavousett as to amount to different phases of the same class or kind of business; viz. selling and applying chemicals and insecticides. Under the record we hold that Sullivan was covered by the Petitioner's policy.

**3** Petitioner contends that the classification "8102, *Seed Merchants*—including operation of seed sorting machinery" does not cover the sale and application of fertilizers, chemicals and insecticides. The record shows that John Bavousett applied to the local agent of Petitioner for coverage on his fertilizer and chemical business and its employees. The local agent called the office of Petitioner in El Paso and talked to the general agent on the telephone. In this conversation the local agent explained the nature of the business conducted by Bavousett Fertilizer & Chemical Co. Within a day or so the local agent sent an order blank, or application, to the general agent. This application gave the name of the business as Bavousett Fertilizer & Chemical Co., and stated the nature of the business as "fertilizer and chemical sales. Both the local agent and the general agent's representative handling this matter testified that the classification number and description were made by the State Insurance Commission, and, as far as Petitioner was concerned, "8102-*Seed Merchants*" was the proper classification for the fertilizer and chemical business. Since the particular classification and description of Bavousett Fertilizer & Chemical Co. business was one selected by Petitioner's agents as best describing the business, Petitioner having full knowledge of the facts, cannot now be heard to say that such classification exonerated it from liability on the policy.

**4** Petitioner further contends that the listing of the employees of Bavousett Fertilizer & Chemical Co. does not show any pilots employed and the rate charged did not include the rate lawfully chargeable for coverage on an airplane pilot. "Condition C" of the policy permits the Company at all reasonable times to in-

spect the plants, works and machinery and appliances, and to examine the books of the employer at any time during the period covered by the policy and for. one year after the policy's expiration to determine remuneration earned by the employees. "Condition A," among other things, provided that if the employer engaged in other business operations than those. described in the Declaration, together with all operations necessary, incident or appurtenant thereto, such declared business operation, or connected therewith, whether conducted at such work places or elsewhere, and such latter operations are not described or rated in the Declaration, then the employer shall pay the premium on such other operations as may be prescribed in the rules and the manual in use by the Company at the date of the issuance of the policy. Under these provisions the Petitioner could have protected itself as to the premium due it for coverage of the pilot, Sullivan.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered April 13, 1960.

MR. JUSTICE GREENHILL, joined by JUSTICE CULVER, dissenting.

I respectfully dissent. Even assuming that Paul Sullivan was an employee, I do not believe that insurance had been purchased or issued to cover the hazardous occupation of crop dusting. Under our recent decision in *Pacific Indemnity Company v. Jones* (1959), this volume 164, 327 S.W. 2d 441, crop dusting by airplane is, in my opinion, a different kind of employment (separate business enterprise) from the operation of an ordinary store which sells seed and other merchandise. It most certainly is a different insurance risk.

Opinion delivered April 13, 1960.

Rehearing overruled May 18, 1960.