**Frank H. GOMEZ, Appellant,**

v.

**TEXAS CASUALTY INSURANCE COMPANY, Appellee.**

No. 10939.

Court of Civil Appeals of Texas.

Austin.

March 14, 1962.

Rehearing Denied April 4, 1962.

Bedford & Underwood, Paul Petty, Ballinger, for appellant.

Upton, Upton, Baker & Griffis, Craig Porter, San Angelo, for appellee.

HUGHES, Justice.

This is an appeal from a summary judgment in which the only question presented is whether or not appellant, Frank H. Gomez, when injured, was an employee covered by a Workmen's Compensation insurance policy, then in force, issued by Texas Casualty Insurance Company, appellee, to W. E. Loftin, appellant's employer.

W. E. Loftin was engaged in the cafe business in Ballinger, Runnels County, Texas. He lived a mile from the cafe on a lot just outside the city limits of Ballinger where he also owned 10½ acres which he used exclusively for feeding and butchering cattle to supply his cafe with meat. Mr. Loftin had only the one business, the cafe business, or the combination cafe and cattle feeding and butchering business. He testified:

"Q Mr. Loftin, in figuring up your profits and loss from your business you include in it the cost of these cattle and the cost of feeding them?

"A I have to. Yes, sir, sure do.

"Q And you include in your income the meat, what you get for the meat that is sold to the cafe?

"A That's right.

"Q And it is all one operation?

"A Yes, sir."

Mr. Loftin had conducted his business in the manner described for a long time. He was engaged in rebuilding and enlarging a barn on his 10½ acres for the purpose of storing feed and having a place to feed his cattle when appellant was injured by the collapse of the partially reconstructed barn caused by a small windstorm.

Appellant was an employee of Mr. Loftin on the barn project. He was not then, nor had he recently been, an employee of Mr. Loftin in the cafe.

The solution of the question presented depends upon a proper construction of the following portion of Art. 8309, Sec. 1, Vernon's Ann.Civ.St.:

" 'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer; provided that an employee who is employed in the usual course of the trade, business, profession or occupation of an employer and who is temporarily directed or instructed by his employer to perform service outside

of the usual course of trade, business, profession or occupation of his employer is also an employee while performing such services pursuant to such instructions or directions; *provided further, that such persons, other than independent contractors and their employees, as may be engaged in the work of the employer of enlargement, construction, remodeling or repairing of the premises or buildings used or to be used in the conduct of the business of the employer shall be deemed employees; * * *.*" Italics added.

As enacted in 1917[1] the definition of an "employee" in the Workmen's Compensation Act was confined to the language of the present Act from its beginning to the first semicolon, supra.

In 1937 the present definition of "employee" was first incorporated in the Act.[2] We quote in full the emergency clause to this amending Act:

"The inadequacy of the provisions of the Workmen's Compensation Law to compensate employees for injuries received while in the performance of certain work or acts unusual to their regular employment, but within the general scope and in furtherance, or in the interest, of the business, trade, profession or occupation of the employer (as illustrated by the decision of the Commission of Appeals, adopted by the Supreme Court, in Texas Employers' Insurance Association vs. Wright, 128 Tex. 242, 97 S.W.2d 171), creates an emergency and an imperative public necessity demanding the suspension of the Constitutional Rule requiring bills to be read on three several days in each House, and said Rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted."[3]

The case cited by the Legislature was a case in which a regular employee of the insurance carrying employer was directed by his employer to assist in the construction of a building. The Court held that since the usual trade or business of the employer was not constructing buildings, the employee was not an "employee" under the Act, and was not entitled to compensation.

It is clear that the first proviso added by the Legislature in 1937 was sufficient to overcome the holding in the Wright case.

The Legislature, however, did not stop with remedying the situation reflected in the Wright case. It proceeded to enact a second proviso which included within the definition of "employee" persons who had never been employed in the usual trade or business of the employer. There were, it seems, cases which the Legislature could well have had in mind which prompted it to enact the second proviso of the 1937 amendment. One such case was Texas Employer's Ins. Association v. Sewell, 32 S.W.2d 262, Waco Civil Appeals, writ ref.

In such case the usual business of the employer was making textile products. Sewell was hired by this employer to paint houses to be occupied by regular employees of the employer. Sewell had never done any work for his employer. He was held not to be an "employee."

1. Acts 1917, p. 269, Part IV, Sec. 1.

2. Ch. 262, Acts 45th Leg., Reg.Sess. p. 537. This amending Act was amended in 1943, Ch. 176, Acts 48th Leg., Reg.Sess. p. 279, but the definition of "employee" was left unchanged. (A superfluous "and" was dropped.)

3. In Texas Indemnity Insurance Co. v. Hubbard, 138 S.W.2d 626, Waco Civil Appeals, writ dism. C. J., the Court in reference to the 1937 Amendment stated:
"Surely the Legislature, by the amendment referred to, intended to liberalize the act and to remove and eliminate the extremely technical construction that had been placed by our courts on the Act in question."

In the course of its opinion the Court discussed the cases of Oilmen's Reciprocal Association v. Gilleland, 291 S.W. 197, Tex.Com. of Appeals, Morse v. New Amsterdam, 30 F.2d 974, D.C., Northern District of Texas, and Croswell v. Commercial Standard Ins. Co., 56 S.W.2d 918, Beaumont Civil Appeals, writ ref.

In Gilleland a laundry obtained its water from wells. On account of the growth of its business and its increased demands for water it became necessary to install additional pumping equipment. For this purpose it caused an excavation to be made, and employed Gilleland, a bricklayer, to wall the sides of the opening. Since laying brick was not the usual business of a laundry, Gilleland was held not to be an employee under the Act.

In Morse a company engaged in the grain and grocery business was the employer. It decided to install a new grain elevator to better handle its grain business. Morse, a carpenter, was employed to help construct the elevator. Judge Atwell, following the Court's holding in Gilleland, held that Morse was not an employee under the Act. We quote from Judge Atwell's opinion:

"I reach the conclusion with great reluctance, but must read the policy in the present case in the light of and in conjunction with the Texas statute, and in harmony with the decisions of the highest court of the state.

"The erection of a new building by workmen called for that purpose, in which the employer proposes to carry on an established business, cannot be said to be in the 'usual' course of such business as he was already carrying on. It is the unusual. It is the extraordinary. This employer was not engaged in the building of elevators, nor in the building of hoppers therefor, but it was engaged in the business of grain and groceries. Such

business had reached the proportion that it seemed wisdom to add the elevator feature, and the building therefor was being constructed by additional workmen, one of whom, while in such work, was injured.

"Our deep solicitude for those who make our industrial world so splendid demanded their protection from the hazards of the courthouse when they suffered injuries while engaged in their work. That the law having that purpose in view should be liberally construed, so as not to rob them of any of its protective features, has made me reluctant to reach this conclusion, but the conclusion is inescapable, and the court merely speaks the law as it is written."

In Croswell, the employer was Pig Stands Company, a company engaged in a kind of restaurant business. Croswell, a carpenter, was employed to help construct a new building in which Pig Stands intended to open a new place of business. It was held that Croswell was not an employee under the Act.

These cases, and especially the eloquent language of Judge Atwell, were adequate to alert the Legislature to the need for redefining an "employee" under the Workmen's Compensation Act so as to include not only regular employees temporarily assigned to extraneous work but to new employees performing work of a specialized character. As to the latter need, the Legislature settled on the definition contained in the second proviso of the 1937 Act.

 It is conceded that appellant was an employee of Mr. Loftin and that at the time of his injury he was engaged in the work of his employer in the enlargement and remodeling of a building. The only matter in dispute is whether or not this building was "used or to be used in the conduct of the business of the employer." We believe that it was so used or to be used.

**550**

We give a simple illustration. If in this case the building which Mr. Loftin was enlarging was located adjacent to his cafe and was used exclusively as a bakery for supplying his cafe, and only his cafe, with all the bread and pastry sold in the cafe, would such building be used in the conduct of the business of operating a cafe? If so, and we can think of no reason to believe otherwise, then to affirm this case we would have to draw a distinction between bread and meat as related to the cafe business. We know that many restaurants stake their reputation on their steaks, and widely advertise that they serve only their own corn-fed self-raised beef. A building exclusively devoted to the feeding and butchering of the cattle from which the beef is produced is an adjunct to the cafe and, in our opinion, is used in the conduct of the cafe business.

Appellee cites several cases to the effect that where there are two or more businesses operated by one employer he may carry Workmen's Compensation insurance for the employees of one business only. We do not disturb these authorities. The employer here had only one business, the cafe business.[4]

Appellee also discusses the provisions of the policy issued by it to Mr. Loftin. We need not pursue this matter because if we have correctly interpreted the law so as to make appellant an employee of Mr. Loftin in his operation of the cafe, then appellee having insured the cafe employees, appellant is covered by such policy as a matter of law and regardless of its provisions. Pacific Indemnity Company v. Jones, 160 Tex. 164, 327 S.W.2d 441; Hartford Accident and Indemnity Company v. Christensen, 149 Tex. 79, 228 S.W. 2d 135.

The judgment of the Trial Court is reversed and this cause is remanded.

Reversed and remanded.

Rehearing Denied April 4, 1962.

Bedford & Underwood; Paul Petty, Ballinger, for appellant.

Upton, Upton, Baker & Griffis, Craig Porter, San Angelo, for appellee.

---

4. In Maryland Casualty Company v. Sullivan, 160 Tex. 592, 334 S.W.2d 788, the Court stated:

"In view of the interrelated and commingled character of financing and bookkeeping of the two businesses—Bavousett Fertilizer & Chemical Co. and Better Crop Dusters Co., we cannot say that they were two separate and distinct kinds of business. They were so managed and operated by Bavousett as to amount to different phases of the same class or kind of business; viz. selling and applying chemicals and insecticides. Under the record we hold that Sullivan was covered by the petitioner's policy."