**SOUTHWESTERN BELL TELEPHONE CO., Appellant,**

v.

**MEADER CONSTRUCTION CO., Appellee.**

**No. 6724.**

Court of Civil Appeals of Texas, El Paso.

Nov. 22, 1978.

Rehearing Denied Dec. 20, 1978.

James E. Barden, Marlin L. Gilbert, San Antonio, for appellant.

Roy L. White, Nancy J. Anderson, Bayne, Snell & Krause, Barry Snell, San Antonio, for appellee.

## OPINION

WARD, Justice.

A road builder known as Meader Construction Company sued Southwestern Bell Telephone Company for damages caused from its having made false and fraudulent representations to the Plaintiff as to dates it would remove its telephone poles and other facilities from right-of-ways contracted to be constructed by the Plaintiff. Trial was to a jury which returned a verdict sustaining the Plaintiff's contentions. Judgment was then entered for Meader against Southwestern Bell for $56,934.00 actual damages and $230,000.00 exemplary damages. The Defendant appeals asserting error in the Court's Charge, as well as numerous insufficiency of evidence points. We reverse and remand as to that part of the judgment which we have described.

Meader Construction Company was the successful bidder on two road improvements undertaken by the City of San Antonio known as the Babcock Road Project and the Walters-Moore Street Project. The first was the Babcock Road Project and it was advertised for bidding in November, 1973. As was its custom, the City invited contractors interested in bidding the Project to a pre-bid conference on November 20, 1973. The conference was attended by the Plaintiff's President, Ike Meader, and other interested contractors, as well as representatives of the various utilities whose facilities would be affected by the construction. Prior to such a conference, the interested contractors would have previously received a set of bid documents, and would have probably made an on site investigation and preliminary cost analysis of the Project. At the conference, various problems were discussed and explained, and dates that the various utilities would relocate their obstructing facilities were settled. Ike Meader testified that at that meeting the Defendant's engineer told him that the telephone poles in the Project area would be removed by January 1, 1974. He testified that this statement was relied upon by him in making his work plans, his cost analysis of the Project, and his bid to the City, which was finally accepted. Construction then started on the Babcock Road Project on January 14, 1974. According to Meader's version, when he started excavation, the telephone poles were in his way and the poles thereafter seriously interfered with the performance of his contract with the City. When he complained to the Telephone Company, he stated that all he got was a runaround and a switch from one person to another. As a result, he had to work the entire area with the poles right in the middle of it, and the net result was that his costs were increased by $30,434.00.

As to the Walters-Moore Street Project, the pre-bid conference was held on December 3, 1974. Mr. Meader again attended the meeting, though no Southwestern Bell representative was present. The Plaintiff's bid was then accepted, and on January 24, 1975, a preconstruction meeting was held which Mr. Meader and the representatives of the various utilities, including the Defendant, attended. Due to the nature of the Project, Mr. Meader explained that he proposed to work the job in phases, taking the phases in numerical sequence as required by the City. At that conference, the Southwestern Bell representative told those in attendance that Bell's conflicts would be cleared prior to construction, and a letter was read explaining that Bell's conflicts for the entire length of the Walters-Moore Street Project would be cleared by approximately March 31, 1975. It developed that Bell Telephone did not remove its conflicts in time and there were some sixty-eight telephone poles in the way on the Walters-Moore Street Project. In some areas it resulted in Meader not being able to work around the poles as he had done on the

Babcock Road Project because they were too numerous and were located in the middle of the proposed street. Instead of working the job in phases as planned, he was forced to skip phase and as a result lost time in moving back and forth from one phase to another. Since the orderly sequence was disrupted, Mr. Meader estimated that his actual costs on the Walters-Moore Street Project were increased by approximately $26,500.00.

The Plaintiff's theory that the Telephone Company had made false and fraudulent representations to it which resulted in increased construction costs for the Company was submitted to the jury separately as to each Project. On the Babcock Road Project, the jury determined by its answers to the issues submitted that (1) the Defendant, its agents, servants, and employees knowingly represented and made statements to the Plaintiff prior to the Plaintiff's bid that all telephone installations and obstructions in conflict would be removed prior to the beginning of the construction; (2) that the representations and statements were material in nature and were made to the Plaintiff with the intention that the Plaintiff should act upon them; (3) that the Plaintiff believed and relied upon the representations and statements, and that but for them it would not have made the bid that it did to the City of San Antonio; (4) that the representations and statements of the Defendant, its agents, servants, and employees were false; and (5) that as a result of the representations and statements, the Plaintiff was damaged. The five special issues, numbered 7 through 11 inclusive, were in regard to the Walters-Moore Street Project and were worded in a similar form to the first five issues, and were all answered in favor of the Plaintiff's position.

The trial Court's Special Issue No. 4 was as follows:

"Do you find from a preponderance of the evidence that the representations and statements, if any, of the defendant, Southwestern Bell Telephone Company, its agents, servants and employees, were false?"

Special Issue No. 10 was identical in form, but because of its sequence related to the Walters-Moore Street Project. The Defendant objected to Special Issue No. 4 for the reason that:

"* * * same fails to inquire as to whether or not the representations and statements made by defendant Southwestern Bell were known to be false at the time that they were made; therefore constitutes an evidentiary issue and not an ultimate issue in the case."

Defendant objected to Special Issue No. 10 for the reason that:

"* * * same fails to inquire as to whether or not the representations and statements were known to be false at the time that they were made and whether or not they were made with intent to deceive Meader Construction Company, and therefore is an evidentiary issue only and not an ultimate issue."

The trial Court overruled these two objections, and the overruling of the two objections is the subject of the first two points of error presented by the Defendant.

Before proceeding further, we again note that the Plaintiff's cause of action is based on alleged false and fraudulent representations as to future events. Normally, a failure to discharge a promise regarding the doing of an act in the future is not fraud, otherwise every breach of a contract would amount to fraud. However, since the state of mind of a person making a representation is a fact, it is susceptible of being misrepresented and thus can become the basis of a suit for fraudulent representation. Where a promise regarding future action is made with the intent that it will not be performed and is made to deceive a person, then it is actionable as a fraudulent representation. *Stanfield v. O'Boyle*, 462 S.W.2d 270 at 272 (Tex.1971); *Finch v. McVea*, 543 S.W.2d 449 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.); *King v. Tubb*, 551 S.W.2d 436 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Stone v. Williams*, 358 S.W.2d 151 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.); 25 Tex.Jur.2d Fraud and Deceit, Secs. 44 and 45 (1961); Prosser Torts 4th Ed., 728–730.

The Plaintiff argues that neither of the Defendant's objections were well founded since the inquiry as to falsity was obviously a proper inquiry on each Project. *Texas Industrial Trust, Inc. v. Lusk,* 312 S.W.2d 324 (Tex.Civ.App.—San Antonio 1958, writ ref'd). The Plaintiff's point is that the Defendant's real complaint should have been made to the lack of the additional issue as to whether the misrepresentation was known to be false, and no such objection was made. *Maryland Casualty Company v. Golden Jersey Creamery,* 389 S.W.2d 701 at 705 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.).

The Plaintiff contends that since Rule 274, Tex.R.Civ.P., requires one to "point out distinctly the matter to which he objects and the grounds of his objection," and that since the Defendant has failed to comply with the Rule, there has been a waiver of the objection; that Rule 279, Tex.R.Civ.P., provides that if one or more of the issues necessary to sustain a ground of recovery are submitted to the jury, and one or more such issues are omitted without objection, the trial Court can make findings as to the omitted issues so long as there is evidence to support a finding thereon, and the omitted issue is deemed as found by the Court in such manner as to support the judgment. *Hawes v. Central Texas Production Credit Association,* 503 S.W.2d 234 (Tex.1973); *Roberts v. Holmes,* 412 S.W.2d 947 (Tex.Civ. App.—Eastland 1966, no writ).

We hold that the Defendant's objections to the Charge were sufficient to direct the attention of the trial Court to the omission of the inquiry of whether or not the representation was known to be false in connection with the submission of Special Issues Nos. 4 and 10. In the first place, the gist of the fraud action is the deception as to an existing fact, namely the state of the promisor's mind. *Putnam v. Heissner,* 220 S.W.2d 701 (Tex.Civ.App.—Austin 1949, no writ); *Maulding v. Niemeyer,* 241 S.W.2d 733 (Tex.Civ.App.—El Paso 1951, mand. overr.). If the objection had been sustained and the two proper issues submitted asking if the statements were known to be false at the time they were made, then that would have been the same as an inquiry as to whether or not the representations were made with an intention not to perform. That was stated by Justice Pope in *Texas Industrial Trust, Inc. v. Lusk,* supra at 327, where writ was refused:

"* * * The utterance of a known false statement, made with intent to induce action, in our opinion, is equivalent to an intent to deceive. * * *"

In the second place, under Rule 277, Tex.R. Civ.P., it is no longer objectionable that an issue is general or includes a combination of elements or issues. Under the Rule as now written, the Court was at liberty to add the vital missing element to Special Issues Nos. 4 and 10, and the Court's attention was properly called to the omission. The first two points are sustained.

Since we have sustained points which call for a remand, we will of necessity have to discuss the Defendant's evidentiary points which call for a rendition if sustained. Points of Error Nos. 3 and 4, and 13 and 14 are the evidentiary attacks on the jury's findings to Special Issues Nos. 4 and 10 previously set out. Regardless of the form of the submission of Special Issues Nos. 4 and 10, both parties meet on common ground that the success of the "no evidence" attack on these two issues will depend upon whether or not there was evidence in the record to show that the speaker of the statement relating to the matters that were to occur in the future knew at the time that the statement was made that it was false. It has often been stated that the existence of fraudulent intent at the time of the promise is a difficult thing to prove. The mere breach of the promise is never enough in itself to establish the fraudulent intent. However, it is also recognized that the denial by a defendant that he ever made the promise to perform in the future, together with his failure to perform, furnishes the needed evidence of lack of intent to perform. *Stanfield v. O'Boyle,* supra; *K.W.S. Manufacturing Company v. McMahon,* 565 S.W.2d 368 (Tex.Civ.App.— Waco 1978, writ ref'd n. r. e.); *Finch v. McVea,* supra.

■ Considering the two "no evidence" points, we will consider only the evidence and the inferences arising therefrom which support the jury verdict. On the Babcock Road Project, the Plaintiff testified that the representative of the Defendant promised that their facilities would be out of the way by January 1, 1974. The Southwestern Bell representative who attended the conference specifically denied making the promise. On the Walters-Moore Street Project, the Plaintiff testified that the Defendant's representative told him they would keep out of the way of the planned phases of construction, and again that representative denied making the statement. When the Plaintiff started excavating on the first Project, the telephone poles were in his way, and the Plaintiff testified that all he got out of the Company as to his complaints were evasive answers, and it was one month after construction began before Southwestern Bell removed the old poles. On the Walters-Moore Street Project, the Plaintiff's evidence was that the Defendant promised that the Project would be cleared of poles and obstructions, but some sixty-eight telephone poles were in the way at the time construction began. On both Projects, the Defendant's representative admitted that he knew of no reason why obstructions could not have been moved before construction started. This testimony of the Defendant's attempts to deny making the original representations, together with their failure to perform by the deadline, compels us to overrule the "no evidence" points Nos. 3 and 13.

The Defendant's evidence showed that it knew of the construction and the need to clear its facilities from the Plaintiff's operations. Under its version, it encountered unexpected delays in obtaining material, that misunderstandings occurred as to dates construction would begin in certain areas, that bad weather caused certain other delays, and that some of Meader's own operations conflicted with and slowed the Telephone Company in complying with certain of the requests made. Thus, the Defendant's version was to the effect that, while there were considerable problems on the job, they were eventually solved and the specter of actionable deceit was wholly absent. Obviously, the jury rejected the latter version. However, this is a portion of the evidence that would be of material consideration to the insufficient evidence points Nos. 4 and 14, and they are not reached.

■ A series of "no evidence" points attack the jury findings which determined that the Plaintiff sustained actual damages and which then assessed the amounts of damages on the two Projects. Considering only the evidence and inferences arising therefrom which support the findings, we find that Ike Meader, because of the very nature of the damages which he sustained as a result of the delays, had to estimate the increased costs brought about by the delays. As an example, on the Babcock Road Project, he considered his original bid estimate of moving material at $1.16 per cubic yard and compared that with the actual cost incurred of moving the material at $2.62 per cubic yard. The mathematical formula, figures and information that he used in arriving at the two figures were described in detail to the jury. He performed a control test where his crews worked without poles, and from that test he was able to verify that his costs would have been the same as his original bid cost of $1.16 per cubic yard, and the details of this test were described to the jury. Since he was locked in on his bid with the City and could receive no additional sums because of the delays caused by the poles and obstacles, the increased cost was the amount of loss suffered by him. We hold that the findings of the jury are supported by legally sufficient evidence. We further hold that the evidence was legally sufficient to show the factual data upon which the award for damages could be calculated with reasonable certainty on both Projects. *International Harvester Company v. Kesey*, 507 S.W.2d 195 at 197 (Tex.1974); *Munke v. Hubbard*, 281 S.W.2d 165 (Tex.Civ.App.—Austin 1955, no writ); *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938); *Hall v. Brown*, 398

S.W.2d 404 (Tex.Civ.App.—Waco 1966, no writ).

While a certain amount of damages attributed to the Walters-Moore Street Project are apparently overstated, the error should not arise again on a retrial. We therefore overrule the Defendant's Points of Error Nos. 5, 7, 15 and 17. We do not reach the insufficiency of evidence points made on the damage issues.

■ We will discuss one more point. From its answer to Special Issue No. 7, the jury determined that the Defendant, its servants, agents, and employees knowingly represented and made statements to the Plaintiff prior to the Plaintiff beginning construction on the Walters-Moore Street Project that all telephone installations and obstructions in conflict with the construction would be removed prior to the beginning of the construction. This issue was submitted in somewhat different form from Special Issue No. 1 concerning the Babcock Road Project, since the Plaintiff's complaint concerning the latter representations were allegedly made after the Plaintiff had secured the contract to perform the Walters-Moore Street Project. Point of Error No. 11 complains that there was no evidence to support the jury's favorable answer to Special Issue No. 7. Again, we will consider only the evidence and the inferences arising therefrom which are favorable to the answer, and in this regard we find that the Plaintiff testified that the Defendant's representative told him that all conflicts would be cleared on that Project prior to construction, and that he was told that Bell would stay out of the contractor's way. Point of Error No. 11 is overruled.

A jury finding on malice in connection with the Walters-Moore Street Project is next attacked by the final "no evidence" point. The main thrust of this contention is a repetition of previous arguments that there was no evidence of any fraudulent representation ever made regarding that Project, and, because we have overruled the original argument, we will also overrule the present one for reasons previously stated.

As pointed out, we have overruled the Defendant's "no evidence" points presented on this appeal. We have not discussed all of the insufficient evidence points as they were not reached in view of the remand.

In the final judgment, Southwestern Bell Telephone, by way of a cross-action, recovered a judgment against Meader Construction Company for $2,810.80 and interest; no appeal was taken therefrom, and there is no complaint before us regarding that portion of the judgment. Therefore, that part of the judgment of the trial Court awarding Southwestern Bell Telephone its judgment against Meader Construction Company on its cross-action is severed from the balance of the final judgment and is affirmed. All of the balance of the final judgment, except that which has been specifically severed and affirmed, is reversed and remanded to the trial Court for trial in accordance with this opinion.