TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00056-CV







Texas Workers' Compensation Insurance Facility, Appellant


v.



Peakload Inc. of Bexar County, et al., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 96-00513, HONORABLE HUME COFER, JUDGE PRESIDING 






 The Texas Workers' Compensation Insurance Facility (the "Facility") sued
numerous Peakload corporations (1) and individual members of the Dowdy family (2) (collectively
"appellees") to recover the difference between the amount of insurance premiums paid by the
corporations and the amount claimed to be owing under the Facility's allegations. The Facility
appeals from a summary judgment that it take nothing by its claims against appellees. We will
affirm the summary judgment.


THE CONTROVERSY


 The Facility is a non-profit, unincorporated association of insurers authorized to
write workers' compensation insurance in Texas for employers unable to obtain coverage through
private insurance companies. (4) These employers are designated "rejected risks." Tex. Ins. Code
Ann. art. 5.76-2, § 1.01(10) (West Supp. 1998). The Facility must provide insurance coverage
under the statutory scheme for any "risk" (employer) that appears to be "in good faith entitled to
insurance." Id. § 4.02(b) (West Supp. 1998). Once the Facility determines that a company is
entitled to coverage, the Facility calculates the premium in accordance with classifications and
rates established by the Commissioner. (5)

 Two factors are used to account for risk in the premium calculation: (1) employees
are classified according to risks associated with the work performed; and (2) an employer is rated
according to its history of claims filed. Texas Workers' Comp. Ins. v. Personnel Serv., 895
S.W.2d 889, 891 (Tex. App.--Austin 1995, no writ). Employers are assigned an experience
modifier based on loss history in order to promote safety and to encourage the filing of fewer
claims. An employer with fewer claims receives a credit modifier, namely a multiplier less than
1.0, that reduces the standard premium for workers' compensation insurance. An employer with
frequent job-related claims is assigned a multiplier greater than 1.0, or debit modifier, that
increases the standard premium. A new business with no loss history is assigned the neutral
modifier of 1.0 and pays the standard premium.

 Several Peakload corporations obtained workers' compensation insurance from the
Facility. (6) Six insurance policies are at issue in this appeal: a policy issued to Peakload Inc., of
Bexar County for the period January 16, 1991, through January 16, 1992; two annual policies
obtained in the name of Peakload Inc., of Harris County for the period March 14, 1992, to March
14, 1994; and three annual policies obtained in the name of Peakload Personnel Services, Inc., for
the period April 15, 1991, to April 15, 1994. Each policy was the subject of a final audit by the
Facility's servicing carriers. The Facility concedes the Peakload corporations paid in full the
resulting premiums calculated and charged by the Facility.

 Believing the various corporations owned by the Dowdy family were mere "shells"
used to avoid application of the debit modifiers, by shifting payrolls from corporations with high
debit modifiers to newly created Peakload corporations entitled to the standard premium, the
Facility brought two causes of action in the present lawsuit: (1) an action for fraud based upon
the Dowdys' misrepresentation of the "true nature" of the relationships between the Peakload
corporations; and (2) an action for breach of contract based on a theory that the Peakload
corporations were in fact and law a single employer and failed to pay premiums calculated on that
basis by means of a proper debit modifier. Both causes of action depend upon a common element:
the Dowdy family and the Peakload corporations misrepresented the fact that the corporations
were, in truth, a single employer or business entity for the purpose of calculating workers'
compensation insurance premiums. Because we find the record disproves conclusively this
essential element of the Facility's causes of action for fraud and breach of contract, we need not
discuss appellees' affirmative defense that the causes of action are barred by the statute of
limitations found in section 16.004(a)(3) of the Civil Practice and Remedies Code. (7)

Fraud

 In its third point of error, the Facility contends the trial court erred in granting
appellees' motion for summary judgment because the summary judgment record raised a genuine
issue of material fact concerning whether the Dowdys misrepresented or concealed material facts
regarding the true ownership, control, and relationships among the Peakload corporations in order
to evade the debit modifier, causing the Facility to provide insurance in excess of the risk for
which it received premiums.

 The substance of a common-law fraud action is deception as to an existing material
fact. Southwestern Bell Tel. Co. v. Meader Constr. Co., 574 S.W.2d 839, 843 (Tex. Civ.
App.--El Paso 1978, writ ref'd n.r.e.). The substantive elements are: (1) a material
representation, (2) that is false, (3) that the defendant knew was false when made, (4) that was
made with the intention that it be acted upon by the other party, (5) that the party acted in reliance
on it, and (6) damages. T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex.
1992).

 In its first amended petition, the Facility alleged six instances of fraudulent
conduct, (8) all allegedly motivated by the Dowdys' attempt to conceal that Peakload Inc. was
"actually operating as a single employer to intentionally prevent the Facility from acquiring the
necessary and material information to compute the proper amount of workers' compensation
insurance premiums to charge." (9) The Facility alleged that based upon these misrepresentations,
it provided workers' compensation insurance to "the corporate shells of Peakload Inc." at
substantially lower premiums than would have been charged had the Facility not been deceived
into believing that the "corporate shells" were separate legal entities.

 To determine if the record raises an issue of whether the Dowdys defrauded the
Facility in the manner alleged, we consider first what constitutes the "employer" (10) when applying
for workers' compensation insurance. (11) The Facility contends its method of calculating premiums
for workers' compensation insurance is based on evaluating the "entire experience of the . . .
employer on all of its operations." The Facility states,


No matter how many operations, or forms of operations, a risk has, the first
question which must be addressed in determining coverage under a workers'
compensation insurance policy is who is the employer. Once the employer is
determined, the workers' compensation rules provide that even separate employers
may be combined for purposes of workers' compensation insurance if those
separate employers are owned by the same people or group of people.



The Facility argues: (1) that the Peakload corporations should be considered a single employer
known as "Peakload Inc.," but (2) if the Peakload corporations are indeed separate employers,
they are combinable under the rules of the Commissioner for the purpose of calculating premiums.

 To support its contention that the various Peakload corporations should be
considered a single employer known as "Peakload Inc.," the Facility relies on the deposition
testimony of J. H. Dowdy and Marc Dowdy. According to the Facility, certain admitted practices
of the Peakload corporations--moving payroll obligations from one corporation to another, moving
employees from one corporation to another without a change in job responsibilities, and
performing administrative work for all the corporations out of the same central office--suggest that
a single employer wielded control over all of the Peakload corporations and their employees. This
brings the case within the rule that the employer of an individual is the entity having the right to
control the manner of performing his or her services. See Texas Workers' Comp. Ins., 895
S.W.2d at 893.

 We reject the Facility's theory. It is undisputed that the three corporations in
question--Peakload Inc. of Bexar County, Peakload Inc. of Harris County, and Peakload
Personnel Services, Inc.--are distinct legal entities. It is undisputed that each paid premiums
calculated accordingly. Each is a corporation organized and existing under the laws of the State
of Texas; none of the three is owned by the same person or group of persons. (12) While it is true
that an "employer" of an individual is the entity having the right to control the manner of
performing his or her services, (13) it does not necessarily follow that corporations organized and
existing as separate legal entities become a single employer merely because each allegedly
exercises control, at different times, over the same individuals.

 None of the decisions cited by the Facility discuss employee control in the present
context where legally distinct employers are alleged to be in fact and law a single employer. The
decisions discuss instead the liability of one legal entity for the obligations of another legal entity
when employees of the first employer become "borrowed employees" (14) of the second employer. 
Resolution of the "borrowed employee" issue involves a determination of whether the services of
an employee in the general employment of one employer have been loaned temporarily to another
employer. The present controversy does not involve a question of which corporate entity was the
employer of a particular employee at the time of a particular workers' compensation claim. These
decisions do not, therefore, support the Facility's "single employer" theory.

 The two decisions (15) cited by the Facility for the proposition that, under Texas law,
multiple entities can be a single employer for the purposes of workers' compensation insurance
fail to substantiate the argument. We reject the Facility's "single employer" argument.

 The Facility contends that even if the Peakload corporations are separate employers,
they are nevertheless combinable under the Commissioner's rules as a "single business
enterprise." (16) The Facility relies upon a rule that even legally distinct employers may be combined
for purposes of workers' compensation insurance if the majority interest in those separate
employers is owned by the same people or group of people. See Texas Basic Manual of Rules,
Classifications and Rates for Workers Compensation and Employers' Liability Insurance, Rule III
B(1)-(3). (17) Rule III B(1) provides as follows: "Separate legal entities may be insured in one
policy only if the same person, or group of persons, owns the majority interest in such entities. 
Classifications shall be applied separately to each legal entity."

 On its face, Rule III B(1)-(3) is not applicable. As stated previously, it is
undisputed in the summary judgment record that each Peakload corporation is a corporation
organized and existing under the laws of Texas and none of the capital stock of the three pertinent
corporations (18) is owned by the same person or group of persons. The Facility contends that the
various Peakload corporations remain combinable, nevertheless, because of the precedential effect
of a 1995 Commissioner decision in an appeal by a corporation titled L.S. Mitchell & Sons, Inc. 
The Commissioner's order upholds cancellation of the Mitchell workers' compensation insurance
policy for nonpayment of assessed premiums. The findings of fact made in the agency proceeding
indicate that the Mitchell corporation, a corporation known as Highland's Manufacturing, Inc.
("HMI"), and a corporation known as Baytown Ship Repair ("BSR"), were separate legal entities
owned by three different individuals. In the order, the Commissioner made the following
conclusion of law:


Based on Findings of Fact Nos. 5 through 31, [Mitchell] and HMI should be
treated as a single employer for the purposes of obtaining workers' compensation
insurance from the Fund. Rule III.B.2 and 3 of the Texas Workers' Compensation
and Employers' Liability Manual.



The Commissioner's order was affirmed in an unpublished decision of a Travis County District
Court. (19) The record made before the Commissioner is not included in the record now before us
on appeal, and an examination of the face of the Commissioner's order does not convince us that
the circumstances in the Mitchell case are sufficiently similar to the present case to be persuasive. 
In particular, there is nothing in the order to indicate the Commission considered the central issue
involved in the present controversy, namely a disregard of the autonomous legal status of distinct
corporations in order to establish fraud and collect additional workers' compensation premiums. 
Instead, the order appears to base a cancellation of workers' compensation insurance on a failure
to pay assessed premiums. (20)

 We hold, therefore, that under Rule III B(1)-(3), the Peakload corporations are not
combinable because the Rule requires that "the same person, or group of persons, [own] the
majority interest in [the separate legal] entities." (21) The Facility's summary judgment proof,
detailing the various factors upon which a court could base a decision applying the rule, does not
raise a disputed material fact issue in that regard.

 Nothing in the summary judgment record suggests the Peakload corporations acted
as either a single employer or a single business entity; each Peakload corporation must therefore
be considered a separate employer for the purpose of workers' compensation insurance. It is true,
as the Facility contends, that the Peakload corporations had a statutory duty to fully disclose
information concerning their true ownership, change of ownership, operations, and payroll. See
Tex. Ins. Code Ann. art. 5.65-B(b) (West Supp. 1998). Nothing in the record shows a violation
of this statute. The record shows instead, without dispute, that each Peakload corporation
provided the Facility with accurate representations, based upon its status as a separate legal entity,
and thus complied exactly with the disclosure requirements of the statute. All of the summary
judgment evidence relied upon by the Facility to prove the Peakload corporations misrepresented
and concealed material facts, is based upon a premise that an entity known as "Peakload Inc." was
in fact the single employer of all employees of each Peakload corporation. Nothing in the
summary judgment record tends to establish this premise; it is merely a proposition alleged and
assumed by the Facility. The Facility has alleged no other basis for its claim of fraud; therefore,
appellees have met their burden of showing there is no genuine issue of material fact concerning
the fraud claim. We overrule point of error three.


Breach of Contract

 The word "breach," as applied to contracts, is defined as a failure without legal
excuse to perform a promise which forms a whole or a part of the contract. See 17A Am. Jur. 2d,
Contracts § 716 (1991). The Facility contends the Peakload corporations breached their contracts
for workers' compensation insurance by failing to pay premiums based on their alleged operation
as a single employer.

 Appellees filed undisputed summary judgment proof that each Peakload corporation
paid all premiums calculated and assessed by the Facility. Appellees are therefore entitled to
summary judgment unless the summary judgment record raises a genuine issue of fact concerning
misrepresentations by appellees that led to the calculation and assessment of unlawfully low
premiums. Because each Peakload corporation is a separate employer for purposes of workers'
compensation insurance premiums, the record does not raise such a fact issue. Appellees have in
consequence disproved as a matter of law the Facility's contention that appellees failed to perform
a whole or part of any workers' compensation insurance contract.

 We affirm the summary judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: November 19, 1998

Do Not Publish

1. The Peakload corporations, all involved in the businesses of employee leasing and
temporary labor services, are: Peakload Inc. of Bexar County, Peakload Personnel Services, Inc.,
Peakload Inc. of Texas, Peakload Inc. of Harris County, and Peakload Inc. of America. Each is
a corporation organized and existing under the laws of the State of Texas.
2. The individual members of the Dowdy family named in suit are: J. H. Dowdy, Dona J.
Dowdy, Marc S. Dowdy, Yolanda Canales Dowdy, and Gilbert Munoz. J. H. Dowdy is the
founder of the family business and is married to Dona J. Dowdy. Marc Dowdy is married to
Yolanda Dowdy, Gilbert Munoz' mother. At the time suit was filed, the Dowdy family members
named above (as well as Marc Dowdy's daughter, Tiffany, who was not a named defendant) were
the sole owners (3)
3. Marc S. Dowdy's daughter, Tiffany Dowdy, was listed as a part owner of three of the
corporations, but she was not named individually in the lawsuit. 
 
4. The Facility operates as a governmental body only for purposes of the Open Records and
Open Meeting Acts, Tex. Ins. Code Ann. art. 5.76-2, §§ 2.01, .11 (West Supp. 1998). The
Facility stopped writing workers' compensation insurance on December 31, 1993. See Act of
Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, § 18.24, 1991 Tex. Gen. Laws 362, 362. On January
1, 1994, the Texas Workers' Compensation Insurance Fund became the insurer of last resort for
workers' compensation insurance in Texas. Tex. Ins. Code Ann. art. 5.76-4 (West Supp. 1998).
5. The duties of the former State Board of Insurance are now performed by the Commissioner
of Insurance or the Texas Department of Insurance consistent with their respective powers and
duties set forth in the Insurance Code. See Tex. Ins. Code Ann. arts. 1.01A, .02 (West Supp.
1998); see also Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 13.01, 1991 Tex. Gen. Laws
939, 1133. For convenience, we will use the word "Commissioner" to refer to both the
Commissioner of Insurance and the Texas Department of Insurance.
6. The Facility contracts with an independent insurer to become a servicing carrier for the
Facility. A servicing carrier issues and services insurance policies on behalf of the Facility,
including auditing and collecting premiums. The Facility and not the servicing company is the
insurer. See Maintenance v. ITT Hartford Group, Inc., 895 S.W.2d 816, 818 (Tex.
App.--Texarkana 1995, writ denied). The servicing company is simply an agent that issues a
policy for the pool. Id.
7. We review the record under familiar precepts: (1) a movant for summary judgment bears
the burden of showing the absence of a genuine issue of material fact and that he is entitled to
judgment as a matter of law; (2) in deciding whether there exists a disputed issue of material fact
precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3)
every reasonable inference from the record must be indulged in favor of the nonmovant and any
doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49
(Tex. 1985). A defendant is entitled to summary judgment if the record disproves conclusively
at least one of the essential elements of the plaintiff's cause of action or establishes as a matter of
law the elements of an affirmative defense. See Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995); Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 27 (Tex. 1990).
8. The petition states, 


 This fraudulent conduct included, but was not limited to the following:


 a. Every application denied that the company operated under the name Peakload Inc.


 b. Every application denied that the controlling owners of applicant owned over 50% of
any other business operation in Texas.


 c. Every application denied that applicant had previously applied to the Facility for
insurance coverage.


 d. Every applicant misrepresented the estimate of payroll initially.


 e. Every applicant refused to maintain by employee in class of work accurate records of
the total remuneration earned by each employee and when audited misrepresented that
the employees were not all employees of one employer.


 f. Every application misrepresented that the true ownership of the applicant was the
Dowdy family, and that applicant was merely a part of a single employer.
9. The Facility denominates the alleged single employer "Peakload Inc." Appellees deny that
such an entity exists, flatly stating, "There is no such thing as 'Peakload, Inc.' which like
'Peakload Services' is a trade name utilized by all the Peakload companies, as was repeatedly
disclosed to [the Facility]." The summary judgment record does not show the existence of a legal
entity bearing the title "Peakload Inc." Nothing in the summary judgment record purports to
attack the corporate status of any of the Peakload corporations.
10. The Texas Workers Compensation and Employers Liability Manual defines employer as "an
individual, partnership, joint venture, corporation, association, or a fiduciary such as a trustee,
receiver or executor, or other entity."
11. The Facility places its discussion of this issue in its first point of error.
12. According to applications filed with the Facility and Marc Dowdy's affidavit filed in the
cause, at the times material to the litigation Yolanda Canales Dowdy owned all the capital stock
of Peakload Inc., of Bexar County, Gilbert Munoz owned all the capital stock of Peakload Inc.,
of Harris County, and Dona J. Dowdy owned all the capital stock of Peakload's Personnel
Services, Inc.
13. See Texas Workers' Comp. Ins. v. Personnel Serv., 895 S.W.2d 889, 893 (Tex.
App.--Austin 1995, no writ); Marshall v. Toys-R-Us Nytex, Inc., 825 S.W.2d 193, 196 (Tex.
App.--Houston [14th Dist.] 1996, writ denied).
14. Texas courts recognize that a general employee of one employer may become the borrowed
servant of another. Sparger v. Worley Hosp., Inc., 547 S.W.2d 582, 583 (Tex. 1977). The
doctrine protects the employer who had the right of control from common-law liability. Dension
v. Heber Roofing Co., 767 S.W.2d 862, 864 (Tex. App.--Corpus Christi 1989, no writ). 
15. See Maryland Cas. Co. v. Sullivan, 334 S.W.2d 783 (Tex. 1960); Gomez v. Texas Cas.
Ins. Co., 355 S.W.2d 546 (Tex. Civ. App.--Austin 1962, no writ).
16. By considering the application of the "single business enterprise" theory, we impliedly
reject appellees' argument that the Commissioner has primary jurisdiction to decide whether the
Peakload corporations may be treated as a single business enterprise. A recent opinion by this
court considered another rule contained in Texas Basic Manual of Rules, Classifications and Rates
for Workers Compensation and Employers' Liability Insurance and made no mention of any
unresolved administrative issues that had to be first adjudicated by the Commissioner. Texas
Workers' Comp. Ins., 895 S.W.2d at 891. Moreover, the Facility "has the legal rights of a private
person in this state and the power to sue in its own name. No procedure established under [article
5.76-2 of the Insurance Code] is a prerequisite to the exercise of the power by the facility to sue." 
Tex. Ins. Code Ann. art. 5.76-2, § 2.05(m) (West Supp. 1998). Accordingly, we do have
jurisdiction to decide whether premiums are owed on the basis of the "single business enterprise"
theory.
17. The rules contained in the Texas Basic Manual of Rules, Classifications and Rates for
Workers Compensation and Employers' Liability Insurance were promulgated by the
Commissioner. Texas Insurance Code section 5.96(a) gives the Commissioner the power to
promulgate rules governing workers' compensation insurance. Although the rules are not
published in the Texas Register, the Commissioner gives notice through the Register when new
rules or changes to rules are proposed. Tex. Ins. Code Ann. § 5.96(a) (West Supp. 1998). Texas
Insurance Code section 5.96(k) states, "The Administrative Procedure and Texas Register Act
(Article 6252-13a, Vernon's Texas Civil Statutes), does not apply to [Commissioner] action taken
under this article." Therefore, the rules in question were not promulgated under the
Administrative Procedure Act and do not appear in the Texas Administrative Code. Tex. Ins.
Code Ann. § 5.96(k) (West Supp. 1998).
18. The corporations that obtained insurance policies at issue in this appeal are: Peakload Inc.,
of Bexar County, Peakload Inc., of Harris County, and Peakload Personnel Services, Inc.
19. See judgment by Judge Dietz, April 16, 1996, Travis County District Court, Cause No.
95-09147.
20. Finding of fact no. 31 states, "When assessed additional premium based on combining
HMI's payroll with APPELLANT's payroll, APPELLANT did not pay the increased premium."
21. Appellees contend the Commissioner, in a series of letters sent to the Facility and various
Peakload corporations, informed the Facility the Peakload corporations could not be combined for
experience rating. Appellees argue the letters constitute "acts or decisions" of the Commissioner,
appealable first to the Commissioner for reconsideration, and only then to district court. See Tex.
Ins. Code Ann. art. 5.76-2, § 2.09(a) (West Supp. 1998) ("If the fund or facility is adversely
affected by an act or decision of the board, it may make a written request for reconsideration to
the board not later than the 30th day after the act or decision.") (emphasis added). Appellees
argue the Facility never appealed the combinability decisions to the Commissioner and that the
statutory time limit has expired, preventing any further reconsideration.


 Our decision that the Facility's summary judgment proof does not raise a disputed material
fact issue regarding fraud is not based on this collateral-attack argument. The use of the word
"may" in a statute is usually construed to mean the Legislature intended the particular provision
to be merely directory or permissive. See Valles v. Texas Comm'n on Jail Standards, 845 S.W.2d
284, 288 (Tex. App.--Austin 1992, writ denied). Upon receipt of the Commissioner's
combinability decisions, the Facility chose not to make a written request for reconsideration. The
Facility's lawsuit seeking money damages based on fraud and breach of contract is permissible and
is not an improper collateral attack on the combinability decisions of the Commissioner.


employer who had the right of control from common-law liability. Dension
v. Heber Roofing Co., 767 S.W.2d 862, 864 (Tex. App.--Corpus Christi 1989, no writ). 
15. See Maryland Cas. Co. v. Sullivan, 334 S.W.2d 783 (Tex. 1960); Gomez v. Texas Cas.
Ins. Co., 355 S.W.2d 546 (Tex. Civ. App.--Austin 1962, no writ).
16. By considering the application of the "single business enterprise" theory, we impliedly
reject appellees' argument that the Commissioner has primary jurisdiction to decide whether the
Peakload corporations may be treated as a single business enterprise. A recent opinion by this
court considered another rule contained in Texas Basic Manual of Rules, Classifications and Rates
for Workers Compensation and Employers' Liability Insurance and made no mention of any
unresolved administrative issues that had to be first adjudicated by the Commissioner. Texas
Workers' Comp. Ins., 895 S.W.2d at 891. Moreover, the Facility "has the legal rights of a private
person in this state and the power to sue in its own name. No procedure established under [article
5.76-2 of the Insurance Code] is a prerequisite to the exercise of the power by the facility to sue." 
Tex. Ins. Code Ann. art. 5.76-2, § 2.05(m) (West Supp. 1998). Accordingly, we do have
jurisdiction to decide whether premiums are owed on the basis of the "single business enterprise"
theory.
17. The rules contained in the Texas Basic Manual of Rules, Classifications and Rates for
Workers Compensation and Employers' Liability Insurance were promulgated by the
Commissioner. Texas Insurance Code section 5.96(a) gives the Commissioner the power to
promulgate rules governing workers' compensation insurance. Although the rules are not
published in the Texas Register, the Commissioner gives notice through the Register when new
rules or changes to rules are proposed. Tex. Ins. Code Ann. § 5.96(a) (West Supp. 1998). Texas
Insurance Code section 5.96(k) states, "The Administrative Procedure and Texas Register Act
(Article 6252-13a, Vernon's Texas Civil Statutes), does not apply to [Commissioner] action taken
under this article." Therefore, the rules in question were not promulgated under the
Administrative Procedure Act and do not appear in the Texas Administrative Code. Tex. Ins.
Code Ann. § 5.96(k) (West Supp. 1998).
18. The corporations that obtained insurance policies at issue in this appeal are: Peakload Inc.,
of Bexar County, Peakload Inc., of Harris County, and Peakload Personnel Services, Inc.
19. See judgment by Judge Dietz, April 16, 1996, Travis County District Court, Cause No.
95-09147.
20. Finding of fact no. 31 states, "When assessed additional premium based on combining
HMI's payroll with APPELLANT's payroll, APPELLANT did not pay the increased premium